[Crim. No. 10666. In Bank. June 16, 1967.]

In re JAMES DAVID BLACK on Habeas Corpus.

Frank C. Wood, Jr., for Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bruce William Dodds, Deputy Attorney General, for Respondent.

SULLIVAN, J. — Petitioner, presently confined at the Reception Guidance Center, California Institution for Men, Chino, California, seeks a writ of habeas corpus on the ground that the Superior Court of the County of Los Angeles denied his application for a new probation report and for probation in violation of rights guaranteed to him by the Fourteenth Amendment to the Constitution of the United States and by article I, section 13 of the Constitution of California. We issued an order directed to the Director of the Department of Corrections (director) to show cause why the relief prayed for by petitioner should not be granted. In response the Superintendent of the California Institution for Men at Chino on behalf of the director has filed a return.

The record before us discloses the following pertinent chronology. In December 1962 while on federal probation after conviction of forgery (18 U.S.C.A. § 2314) in the United States District Court for the Southern District of California, petitioner was arrested by California authorities on a charge of embezzlement. On July 17, 1963, he was indicted by the grand jury of Los Angeles County on four counts of grand theft. (Pen. Code, § 487, subd. 1.)[1] On August 1, 1963, because of the matters alleged in the California charges, petitioner's federal probation was revoked and he was remanded to custody to serve his federal sentence. On October 14, 1963, in the Los Angeles Superior Court, he entered a plea of guilty to one count of the above-mentioned indictment. On November 8, 1963, probation was denied and petitioner was sentenced to state prison for the term prescribed by law, which sentence

---

[1]Hereafter, unless otherwise indicated, all section references are to the Penal Code.

was ordered to run consecutively to the sentence then being served by petitioner under his federal conviction. The other counts of the indictment were dismissed.

The director has attached to his return a transcript of the oral proceedings had upon the hearing of the motion for probation and upon the arraignment of defendant for judgment. Petitioner was represented by counsel who was not his present counsel. The transcript reveals not only the court's careful consideration of the matter but also its positive and unmistakable determination that the situation did not call for leniency.[2] After imposing sentence as indicated above, the court continued: "Upon the serving of his federal sentence, however, the Sheriff of this County is ordered to pick him up from his place of incarceration and then deliver him into the custody of the Director of Corrections at the California Institution for Men at Chino. The time to be served pursuant to the state violation shall not run concurrent with the federal time but shall run consecutive."

On October 7, 1966, petitioner, presumably having served his federal sentence, was released from the federal prison at Terminal Island, California, and transported to the county jail at Los Angeles. The record does not disclose, and at oral argument counsel were unable to advise us, how or why he happened to be brought there. It can be reasonably assumed that the Los Angeles sheriff's office in the course of its duties (former Code Civ. Proc., § 1963, subd. 15) was carrying out the directive of the court that petitioner be picked up at the federal penitentiary and delivered to the state prison. Indeed this seems to be supported by a copy of a letter of the Los Angeles District Attorney attached to the instant petition which indicates that while at the Los Angeles County jail petitioner "had been treated as a transient prisoner, with a transient booking. . . ."

On October 11, 1966, as petitioner alleges, he was brought

---

[2] The court observed that petitioner was a "dedicated swindler"; that despite "two prior felony convictions if not three," petitioner had served only seven months in a federal penitentiary; that as a result of the then recent involvement, he fled to Mexico, and concluded: "This man is a menace to society, he has been for years; he has been ever since he has been out of school. He has been thieving his way through life; that is all there is to it. I have no intention of letting the time run concurrent, counsel, it is going to run consecutive. I am only sorry there is but one Count I can sentence him on. The defendant will be sentenced to the State Prison for the period prescribed by law. Probation will be denied, of course. He is currently in the federal custody so I cannot do other than order him back to the Federal Authorities."

from the county jail into the Los Angeles Superior Court which thereupon ordered that petitioner be remanded to the custody of the sheriff to be delivered to the Department of Corrections. The record before us does not contain such order. It will be recalled that, as set forth above, the sheriff had already been ordered to deliver petitioner to the director. Nor have we been advised by either of the parties as to how or why petitioner was brought into court. However it can be reasonably concluded from the transcript of the oral proceedings of October 19, 1966, attached to the instant petition, that petitioner was brought into court by mistake.[3]

On October 19, 1966, petitioner again appeared in the superior court with his present counsel.[4] On that occasion petitioner, relying solely on *People* v. *Causey* (1964) 230 Cal.App.2d 576 [41 Cal.Rptr. 116], and *People* v. *Rojas* (1962) 57 Cal.2d 676 [21 Cal.Rptr. 564, 371 P.2d 300], in effect moved the court ''to again examine the facts; perhaps order a new probation report since more than fifteen months had gone by. . . . I [i.e., counsel for petitioner] think he's completely rehabilitated himself and his mental problems have been eliminated, and I just think this is the kind of case where perhaps if not the Court, at least the Adult Authority should have the opportunity of an amended and supplemental probation report. That's why I was here.'' Petitioner has characterized his statement to the court as a ''Motion . . . for a supplemental and/or new probation report.'' The gist of his counsel's argument on the motion was that petitioner had been rehabilitated since his last court appearance in November 1963; that the ''real facts'' should be brought to the attention of the court; and that under such circumstances, peti-

[3]Petitioner had been denied probation and sentenced to prison on November 8, 1963, by the Honorable Donald R. Wright. On October 11, 1966, he was brought before the Honorable Arthur L. Alarcon. Referring to this incident, Judge Alarcon stated: ''The Sheriff was to pick up the defendant at the Federal prison at the end of his Federal sentence and deliver him to Chino. So, actually, there was no reason for it to be on the calendar on October 11 since the order of November the 8th is still in effect.''

[4]We have not been furnished with any record explaining petitioner's appearance before Judge Alarcon on October 19, 1966. Petitioner asserts that on October 17, 1966, ''an order was made'' directing his return to court because he ''had been deprived of his right to legal counsel in the prior proceedings of October 11, 1966.'' He also refers to proceedings on October 17, 1966, as having been ''for the purposes of hearing a motion for a new and/or supplemental probation report and hearing prior to imposition of sentence and delivery to the Director of Corrections.'' We have been furnished with no record pertaining to proceedings had on October 17, 1966.

tioner's incarceration pursuant to the 1963 sentence would not be "in the interests of justice nor in conformity with the philosophy expressed in Section 1203 or the philosophy expressed in People versus Causey."

Petitioner's motion was denied on the specific ground that the court lacked jurisdiction. His motion for stay of execution was also denied. The court then ordered the petitioner into the custody of the sheriff to be delivered to the director.

On October 21, 1966, while in the custody of the sheriff in the Los Angeles County jail, petitioner applied to the Court of Appeal for a writ of habeas corpus and for a stay of execution. Nevertheless petitioner was delivered to the custody of the director at Chino. His above petitions were thereafter denied.

Petitioner contends before us that his imprisonment and confinement, although initially lawful, have become illegal because the superior court, having jurisdiction to order a new probation report, should have ordered, examined and considered such a report so as to inform itself of the facts and circumstances in respect to petitioner's alleged rehabilitation and should have entertained and considered petitioner's new application for probation in the light thereof. The director's position as disclosed by his return is that he has petitioner in his lawful custody pursuant to the judgment of conviction of grand theft entered by the Los Angeles Superior Court. The director contends (1) that habeas corpus is not the proper remedy to review the trial court's order denying petitioner's application for a new probation report and for probation; and (2) that the trial court had no jurisdiction to entertain, nor should it have entertained, petitioner's application. We have concluded that petitioner has pursued the proper remedy but that the trial court properly declined relief.

The director argues that an appeal lies from the instant order as from "any order made after judgment, affecting the substantial rights of the party." (Pen. Code, § 1237, subd. 3; *People* v. *Causey, supra,* 230 Cal.App.2d 576, 578-579.) Since an appeal lies, so his argument goes, habeas corpus is not a proper remedy in the case before us. We referred to such restrictions on the use of the writ in *In re Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513] : "The general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon

a timely appeal from a judgment of conviction. [Citations.] ''
(In accord: *In re Shipp* (1965) 62 Cal.2d 547, 551-552 [43
Cal.Rptr. 3, 399 P.2d 571]; *In re Manchester* (1949) 33
Cal.2d 740, 742 [204 P.2d 881]; *In re Connor* (1940) 16
Cal.2d 701, 705 [108 P.2d 10].) But we made clear in *Dixon*
and in other cases that although a remedy by appeal or other
direct attack might have been available, the writ of habeas
corpus nevertheless will lie where special circumstances are
presented. (*In re Newbern* (1960) 53 Cal.2d 786, 789-790 [3
Cal.Rptr. 364, 350 P.2d 116]; *In re Osslo* (1958) 51 Cal.2d
371, 376-377 [334 P.2d 1]; *In re Bine* (1957) 47 Cal.2d 814,
817-818 [306 P.2d 445]; *In re Dixon, supra*; *In re Seeley*
(1946) 29 Cal.2d 294, 296 [176 P.2d 24].) It has been said
that the ''requirement of exhaustion of the appellate or other
remedy . . . is merely a discretionary policy governing the
exercise of the reviewing court's jurisdiction to issue the
writ.'' (Witkin, Cal. Criminal Procedure (1963) p. 769; see
*In re Bell* (1942) 19 Cal.2d 488, 495 [122 P.2d 22].)

In the instant case, petitioner, in between sentences
as it were, claims that he has been rehabilitated and therefore
should not be forced to serve his second sentence until his
eligibility for probation has been reevaluated. The trial court
has refused to do this because it believes it lacks jurisdiction.
Petitioner is not in the precise situation where, having taken
an appeal, he will have practically served his sentence before
the appeal will be heard. (Cf. *In re Newbern, supra,* 53 Cal.2d
786, 789-790.)[5] Indeed, the present record does not disclose
whether or not petitioner has taken an appeal so that it can
at least be said that he will remain imprisoned pending the
outcome of his appeal. (Cf. *In re Ali* (1964) 230 Cal.App.2d
585, 589-590 [41 Cal.Rptr. 108].) Nevertheless, it does appear
that his continued imprisonment followed somewhat unique
developments and rests, at least in part, on the trial court's
position taken on a narrow jurisdictional issue. In view of the
foregoing we feel that petitioner has presented special circum-
stances relieving him from the general rule referred to above
and we are disposed to consider the jurisdictional point raised
by the instant petition.

Petitioner's motion which was the focal point of the
proceedings below on October 19, 1966, was basically a new
application for probation. It will be recalled that probation

---

[5]The crime of grand theft (§ 487, subd. 1) of which petitioner has been
convicted is, in this instance, in view of his sentence to state prison,
punishable by imprisonment ''for not more than 10 years'' (§ 489).

had already been denied three years before at the time of petitioner's sentence. The record discloses that his application at that time was denied on its merits. His eligibility for probation is not questioned.

■ Section 1203 invests the superior court with power to entertain an application for probation and to grant probation in a proper case in the exercise of its sound discretion. "Where an individual is eligible for probation, the trial court must hear and determine his application for probation on the merits. [Citations.] Failure to do so constitutes a denial of a substantial right. [Citations.]" (*People* v. *Hollis* (1959) 176 Cal.App.2d 92, 98-99 [1 Cal.Rptr. 293].)

In the instant case, the mere fact that petitioner had been denied probation and sentenced does not of itself compel the conclusion that the court thereafter lacked all power to consider the matter of probation. As we said in *Oster* v. *Municipal Court* (1955) 45 Cal.2d 134, 139-140 [287 P.2d 755] : ■ "The mere pronouncement of sentence, or the denial of an application for probation before the imposition of judgment, does not preclude the granting of probation after judgment is pronounced, or has been affirmed on appeal. [Citation.]" We there referred to our opinion in *People* v. *Sidwell* (1945) 27 Cal.2d 121, 130 [162 P.2d 913], where we said : "A trial court has power to entertain an application for probation at any time prior to execution of sentence, before or after judgment is pronounced, and on the going down of a remittitur. [Citations.]" ■ As long as the trial court retains in itself the actual or constructive custody of the defendant and the execution of his sentence has not begun, it retains jurisdiction over the defendant and the res of the action and possesses the power to entertain and act upon an application for probation even after the affirmance of a judgment of conviction on appeal and the going down of the remittitur. (*People* v. *Banks* (1959) 53 Cal.2d 370, 383 [1 Cal.Rptr. 669, 348 P.2d 102] ; *Oster* v. *Municipal Court, supra,* 45 Cal.2d 134, 140 ; *People* v. *Sidwell, supra,* 27 Cal.2d 121, 130 ; *In re Bost* (1931) 214 Cal. 150, 153 [4 P.2d 534] ; *Lloyd* v. *Superior Court* (1929) 208 Cal. 622, 629 [283 P.2d 931] ; *People* v. *Causey, supra,* 230 Cal.App.2d 576, 579.) "The critical requirement for control over the defendant and the res of the action is that the court shall not have surrendered its jurisdiction in the premises by committing and delivering the defendant to the prison authority." (*People* v. *Banks, supra,* at p. 384.)

 The uncontradicted facts of the instant case indicate no intention on the part of the trial court to retain jurisdiction over petitioner. The record reflects no steps taken to retain jurisdiction under the probation statutes either (1) by pronouncing judgment and suspending its execution or (2) by suspending the pronouncement of judgment. *People* v. *Banks, supra,* 53 Cal.2d 370, 384; see *Stephens* v. *Toomey* (1959) 51 Cal.2d 864, 870-871 [338 P.2d 182].) Judgment was pronounced; its execution was *not* suspended; the probation statutes were *not* availed of; probation was unequivocally denied. As previously noted, the court ordered petitioner remanded to the federal authorities and ordered the sheriff, upon the completion of the federal sentence, to pick up petitioner from his then place of incarceration and deliver him into the custody of the director at Chino. As Judge Wright observed, there was nothing else that he could do. We think it is abundantly clear that under the circumstances the trial judge did everything within his power to effectuate the execution of petitioner's sentence.

 The execution of a judgment of conviction in criminal cases is, as in civil cases, the process of carrying the judgment into effect. (See *Foust* v. *Foust* (1956) 47 Cal.2d 121, 124 [302 P.2d 11]; *Saunders* v. *Simms* (1920) 183 Cal. 167, 169 [190 P. 806]; *Painter* v. *Berglund* (1939) 31 Cal.App.2d 63, 69 [87 P.2d 360]; Black's Law Dictionary (4th ed. 1951) p. 678.) The manner of executing a judgment sentencing a defendant to imprisonment is prescribed by the Penal Code. Upon the pronouncement of judgment "an abstract thereof as provided in Section 1213.5, certified by the clerk of the court, or by the judge if there is no clerk, must be forthwith furnished to the officer whose duty it is to execute the probationary order or judgment, and no other warrant or authority is necessary to justify or require its execution." (§ 1213.)[6] Upon receipt of such certified abstract it becomes the duty of the sheriff to "take and deliver the defendant to the warden of the state prison. He must also deliver to the warden the certified abstract of the judgment, and take from the warden a receipt for the defendant." (§ 1216.) The term of imprisonment commences to run when the defendant is delivered

---

[6]The form of the abstract of judgment prescribed by section 1213.5 must be substantially such as will include, *inter alia,* the following: "Pursuant to the aforesaid judgment, this is to command you, the said Sheriff, to deliver the above named Defendant into the custody of the Director of Corrections at the . . . . . . at your earliest convenience."

into the custody of the Director of Corrections. (§ 2900.)[7] Under section 1213 the certified abstract of the judgment constitutes the commitment. (*In re Larsen* (1955) 44 Cal.2d 642, 646 [283 P.2d 1043] ; see § 1213.5, subd. (b) wherein the form of abstract is entitled "Commitment to State Prison.") It is thus the order sending the defendant to prison and "the process and authority for carrying the judgment and sentence into effect." *People* v. *Rick* (1952) 112 Cal.App.2d 410, 413 [246 P.2d 691] ; see also *In re Klein* (1961) 197 Cal.App.2d 58, 61-62 [17 Cal.Rptr. 71].) As previously noted "no other warrant or authority is necessary" (§ 1213). It is clear then that at least upon the receipt of the abstract of the judgment by the sheriff, the execution of the judgment is in progress.

We can properly assume in the instant case that the abstract of judgment was delivered to the sheriff, that it contained the court's order as required by statute, and that the sheriff was directed to return petitioner to federal custody and upon his release therefrom to pick him up at his then place of incarceration and deliver him to the director at Chino. Petitioner concedes, as he must, that he was so returned to, released from, and picked up at his place of federal custody. The present dispute apparently arises out of the fact that the sheriff, in dutifully carrying out the court's directive and in the course of transporting petitioner from Terminal Island to Chino, for some reason of his own, temporarily placed petitioner in the Los Angeles County jail under a "transient booking."

We must assess these developments as a whole and in a manner that makes good sense. Our resolution of the question as to whether the court retained custody of, and therefore jurisdiction over, petitioner must rest upon considerations of substance rather than upon technicalities. It is clear, as we have explained, that the court took no action indicating an intention on its part to retain custody of petitioner; indeed, the record demonstrates the contrary. At no time did it stay execution of the sentence. Nor is there anything in the record before us indicating that the court ordered petitioner to be returned to the Los Angeles County jail. At all times after the sheriff took petitioner into custody at the federal penitentiary, the sheriff's activities were directed towards carrying

---

[7]Section 2900 in pertinent part provides: "The term of imprisonment fixed by the judgment in a criminal action commences to run only upon the actual delivery of the defendant into the custody of the Director of Corrections at the place designated by the Director of Corrections as a place for the reception of persons convicted of felonies, . . ."

the judgment into effect, not to returning petitioner to the jurisdiction of the court. Petitioner was brought to the county jail apparenly en route to Chino for delivery to the director. His presence at the jail was but a fortuitous event; his subsequent return to court a mistake. We cannot conclude from such tenuous circumstances that the court had retained custody of petitioner all the while. Petitioner's mere propinquity cannot reinvest the court with jurisdiction. We hold that its jurisdiction over petitioner's cause having been fully relinquished and never revived, the trial court properly concluded that it was not empowered to hear and determine petitioner's motion.

█ We are not apprehensive that our holding will impede or thwart petitioner's rehabilitation. If, as he claims, his three years in federal prison have had a correctional influence upon him so that in the words of his counsel he has "completely rehabilitated himself" such circumstances can be properly and expertly examined and evaluated by the Adult Authority. Petitioner will suffer no prejudice since he is in no less favorable a situation than, for example, a defendant sentenced to state prison on two consecutive sentences who asserts that he has fully rehabilitated himself at the conclusion of the first term. Such an offender cannot interpose a motion for probation at that time. Petitioner, whose motion for probation was considered and denied before sentence, should not, and need not, enjoy any different treatment.

Defendant relies principally upon *People* v. *Rojas, supra,* 57 Cal.2d 676, *People* v. *Causey, supra,* 230 Cal.App.2d 576 and *People* v. *Keller* (1966) 245 Cal.App.2d 711 [54 Cal. Rptr. 154]. All are distinguishable from the instant case. In each of those cases, involving felony convictions, a new reference of the matter to the probation officer and the obtaining of a new probation report were mandatory under section 1203[8] after reversal of the convictions on appeal.

In *Rojas,* defendants Rojas and Hidalgo were convicted of receiving stolen property, Rojas being granted probation and Hidalgo being sentenced to prison. On appeal, the trial

[8]Section 1203 in relevant part provides: "[I]n every felony case in which the defendant is eligible for probation, before any judgment is pronounced, and whether or not an application for probation has been made, the court must immediately refer the matter to the probation officer to investigate and to report to the court, at a specified time, upon the circumstances surrounding the crime and concerning the defendant and his prior record, which may be taken into consideration either in aggravation or mitigation of punishment."

court's finding of guilt was modified to find defendants guilty of *attempting* to receive stolen property. The judgment and probation order were reversed and the cause remanded with directions to enter such lawful judgment or order against each defendant, based on the modfiied finding, as the court might deem appropriate.[9] It was held that the trial court failed to comply with the mandate of section 1203 and erred in refusing to refer the case to the probation department as to both defendants. We there said: ''We note too that a referral to the probation officer is required prior to 'any' judgment, that is, a referral on each occasion of passing judgment. We can conclude only that the Legislature intended with each contemplated pronouncement of judgment and the concurrent determination of whether to grant or deny probation where an accused is otherwise eligible, that a defendant is entitled to have a current report before the trial judge.'' (*People* v. *Rojas, supra,* 57 Cal.2d 676, 682.)

In *Causey,* defendant was convicted of grand theft and sentenced to state prison. Execution of sentence was stayed pending appeal. His conviction was affirmed and upon the filing of the remittitur in the trial court, the defendant moved for an order suspending his sentence and admitting him to probation. Since the execution of the sentence had not begun, the court exercised its jurisdiction to entertain defendant's application but denied probation without obtaining a new and current probation report. The appellate court said: ''Whenever a trial court does entertain an application for probation, it must then proceed to consider it in compliance with the procedural requirements imposed by section 1203 of the Penal Code. . . . Since no current report was before the court, it was error to act on the request for probation until one had been ordered, received, read and considered.'' (*People* v. *Causey, supra,* 230 Cal.App.2d 576, 579-580.)

In *Keller,* the defendant had been convicted on two counts of selling marijuana. On a prior appeal, the court, holding that he had not suffered a previous conviction and was therefore eligible for probation, vacated the judgment for the sole purpose of allowing the trial court to hear and act upon defendant's application for probation. Upon remand the court denied probation without obtaining a current probation report and considering defendant's behavior before pronouncing sentence, even though he had been incarcerated during the

---

[9]See *People* v. *Rojas* (1961) 55 Cal.2d 252, 261 [10 Cal.Rptr. 465, 358 P.2d 921, 85 A.L.R.2d 252].

entire appeal period. The court held that under *Rojas,* the defendant was entitled to a current probation report and reversed the judgment for the sole purpose of allowing the trial court to obtain one.

In the above instances, jurisdiction either had been retained by the trial court or was reinvested in it upon the disposition of the appeal. On the contrary, in the case at bench the record discloses no appeal and further discloses that the trial court did everything it could to surrender jurisdiction and to have the judgment of conviction carried into effect.

The order to show cause is discharged and the petition for the writ of habeas corpus is denied.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.