[Crim. No.· 16028. Second Dist., Div. Five. Mar. 27, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ROY LEE COLBERT, Defendant and Appellant.

## COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James L. Markman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—A seven-count information was filed against defendant and four codefendants. Defendant was named in four of the seven counts. Count I charged him with assault with intent to commit murder upon Brian Murphy, a peace officer engaged in the performance of his duty. (Pen. Code, § 217.) Count II charged him with assault by means likely to produce great bodily injury upon Jerome Beck, a peace officer engaged in the performance of his duty. (Pen. Code, § 245 subd. (b).) Count IV charged him with battery upon Alexander Sinanian, a peace officer engaged in the performance of his duty. (Pen. Code, § 242.) Count V charged him with battery upon James Hurley, a peace officer engaged in the performance of his duty. (Pen. Code, § 242.)

Separate counsel was appointed to represent defendant pursuant to section 987a of the Penal Code. Jury trial was waived by defendant and each codefendant. The court found defendant guilty of assault by force likely to produce great bodily injury in violation of section 245 subdivision (b) of the Penal Code, a lesser included offense to that charged in count I; guilty of assault upon a peace officer in violation of sections 240 and 241 of the Penal Code, a lesser included offense to that charged in count II; not guilty of count IV; and guilty as charged on count V.

Motion for new trial and application for probation were denied. De-

fendant was sentenced to state prison on counts I, II and V, the sentences to run concurrently.

## FACTS

On the morning of July 21, 1967, defendant and three of his four codefendants in this case were spectators at a trial in the county courthouse involving the fourth codefendant, Gregory Benson. Officers Hurley and Murphy of the Los Angeles Police Department were present as witnesses. Officer Hurley did not testify at the July 21 morning session; Officer Murphy did. During his testimony comments were made by defendant and his codefendants other than Benson to the effect that Murphy was lying.

When the Benson trial recessed for lunch, Hurley and Murphy left the courtroom. Defendant, who was standing in the hallway with the codefendants, threatened to "get" the officers.[1] Hurley and Murphy walked away from them and got on the "down" escalator at the sixth floor. When they had descended two floors, Hurley heard sounds of running and hollering above him, looked back and saw defendant and the four codefendants getting onto the escalator, pushing people out of the way and coming down toward the officers. Defendant shouted a threat to kill one of the officers. Benson said, "No, leave them alone. Wait until they get outside and we will get them then." There were other persons, both male and female, on the escalator between the defendant's group and the officers at the time. Defendant and his companions were shoving these people aside and coming down toward the officers.

Hurley and Murphy waited at the fourth floor for defendant to arrive and Murphy then advised him that he was under arrest for violation of section 311.6 of the Penal Code. Defendant threatened to knock Murphy's teeth out and struck him in the face with his fist. The codefendants then stepped between defendant and the officers and the five of them reboarded the down escalator. Murphy and Hurley attempted to get through the group to reach defendant, but were pushed back by the four codefendants. All of the defendants were screaming taunts and invitations to fight at the officers. Benson taunted them about not being so tough without their guns.

At the second floor, Hurley pushed through the four codefendants and approached defendant who had backed up against the wall facing the escalator. Hurley took his handcuffs from his belt and advised defendant

---

[1] Throughout the events the words spoken to the officers were interlaced with words which, as held in *People v. Cohen,* 1 Cal.App.3d 94, 101 [81 Cal.Rptr. 503] were "offensive" within the meaning of section 415 of the Penal Code. See also *In re Bushman,* 1 Cal.3d 767, 775 [83 Cal.Rptr. 375, 463 P.2d 727].

he was under arrest. Defendant struck Hurley in the face and knocked him to the floor.

Murphy attempted to subdue defendant. Defendant struck Murphy with his fist about the head and face. Defendant then grabbed Murphy's tie and made a jerking downward motion, tightening the tie around Murphy's neck. He continued to grasp the tie despite Murphy's efforts to free it and continued jerking it to tighten it. Murphy was unable to breathe. The color drained from his face and his eyes started to roll back. He started to black out. He reached in his back pocket for his pocket knife and did actually black out. He did not know who cut the tie from his neck but it had been cut when he regained consciousness. Deputy Sinanian of the Los Angeles Sheriff's Department saw Murphy cut the tie himself. Murphy sustained minor lacerations and abrasions as a result of the fracas, but was not hospitalized.

Deputy Beck of the Los Angeles Sheriff's Department happened to be in the courthouse shortly after noon on July 21, 1967. His attention was drawn to the fact that other officers needed assistance on the second floor. When he arrived he saw a large crowd and several fights in progress. Beck went to the assistance of Officer Murphy whose tie was being pulled by defendant and who appeared about to lose consciousness. Defendant kneed Beck in the groin and then butted him in the mouth.

Eventually defendant and codefendant Howard Colbert, his brother, were subdued and arrested. The other three codefendants were arrested later in the afternoon.

### Contentions on Appeal

Defendant questions the sufficiency of the evidence to support the conviction of assault by means of force likely to cause great bodily harm (count I). He argues that the presence of a large number of law enforcement officers on the scene made it unlikely that Officer Murphy would sustain that great bodily harm, even though he concedes that had the episode involving the choking of Murphy by means of pulling on his necktie occurred in a different setting, the likelihood of great bodily harm would exist.

The People rely on *People* v. *Buice,* 230 Cal.App.2d 324 [40 Cal.Rptr. 877], to support their position that the mere presence of a large force of police officers does not preclude conviction under section 245 subdivision (b) of the Penal Code for the type of assault involved here. *Buice* involved an altercation between police and citizens on the city streets at night. In that respect it is not strictly analogous to the instant case where

the attack took place, more or less, on the officers' home ground, the assailants were limited in number, the area of the fracas was confined and assistance to the victim officers in sufficient number to quell the disturbance was immediately at hand. Nonetheless, despite these advantages which the officers enjoyed, and despite the fact that several officers attempted to free him, Murphy was not rescued from defendant's attack until he had lost consciousness and then he was saved only by cutting his tie and not by any loosening of defendant's grasp. If the knife had not been produced when it was, we cannot say what further injury Murphy might have suffered.

█ The likelihood of great bodily injury is essentially a question of fact. (*People* v. *Buice, supra,* 230 Cal.App.2d 324, 345; *People* v. *Nudo,* 38 Cal.App.2d 381 [101 P.2d 162].) █ The trial court's finding on this issue had adequate evidentiary support.

Defendant next argues that since his basic purpose during the entire incident was to avoid arrest, it is a violation of section 654 of the Penal Code to punish him for separate offenses. █ However, "A defendant who commits an act of violence with the intent to harm more than one person or by means likely to cause harm to several persons is more culpable than a defendant who harms only one person." (*Neal* v. *State of California,* 55 Cal.2d 11, 20 [9 Cal.Rptr. 607, 357 P.2d 839].) There was no violation of section 654 of the Penal Code when defendant was punished separately for offenses involving different victims. (Cf. *People* v. *Bauer,* 1 Cal.3d 368, 377-378 [82 Cal.Rptr. 357, 461 P.2d 637].)

Although the present case was tried before the decision in *People* v. *Curtis,* 70 Cal.2d 347 [74 Cal.Rptr. 713, 450 P.2d 33], the trial court ruled on the legality of the original effort by Hurley and Murphy to arrest defendant. The court found that the conduct engaged in by defendant was more properly a disturbance of the peace (Pen. Code, § 415) than a violation of section 311.6 of the Penal Code. █ However, as the court correctly pointed out, the arresting officer is not required to cite the right code section in order to validate an arrest for an offense committed in the officer's presence. (*People* v. *Beard,* 46 Cal.2d 278, 281 [294 P.2d 29]; *People* v. *Walker,* 273 Cal.App.2d 720, 725 [78 Cal.Rptr. 439].) █ The threats to the officers and invitations to fight clearly amount to "threatening, traducing, quarreling [and] challenging to fight" in violation of section 415 of the Penal Code; further defendant's conduct was "offensive" as defined in *In re Bushman,* 1 Cal.3d 767, 775 [83 Cal.Rptr. 375, 463 P.2d 727].

The court further anticipated *People* v. *Curtis, supra,* 70 Cal.2d 347, 357, in holding that an arrestee retains his right of self-defense against excessive force, but that the issue of whether a defendant had properly resorted to an exercise of that right was a question of fact. On this issue the court then, impliedly, found against defendant. There is ample evidentiary support in the record for this finding.

■ Following imposition of sentence on defendant, sections 241 and 243 of the Penal Code were amended to make violations of section 240 and 242 of the Penal Code, committed upon a peace officer felony-misdemeanors. This change in the law requires that this case be remanded to the trial court so that that court may determine whether to impose felony or misdemeanor sentences with respect to counts II and V. (*People* v. *Francis,* 71 Cal.2d 66, 75 [75 Cal.Rptr. 199, 450 P.2d 591]; *People* v. *Scrivens,* 276 Cal.App.2d 429, 435 [81 Cal.Rptr. 86].)

Defendant also claims that in view of the possibility that the trial court might be persuaded to exercise leniency on counts II and V, the matter should also be remanded on count I.

The record before this court does not indicate whether defendant has started to serve the sentence on count I. If that is not the case, the trial court needs no permission from us to reconsider defendant's application for probation on count I. (*People* v. *Banks,* 53 Cal.2d 370, 383 [1 Cal. Rptr. 669, 348 P.2d 102]; *People* v. *Causey,* 230 Cal.App.2d 576, 579 [41 Cal.Rptr. 116]; cf. *In re Black,* 66 Cal.2d 881, 885 [59 Cal.Rptr. 429, 428 P.2d 293].)

■ If, on the other hand, defendant has started to serve the sentence on count I, it is the general rule that the trial court's jurisdiction to grant probation ceases. (*In re Black, supra,* 66 Cal.2d 881.) We have found no authority to support the proposition that jurisdiction to grant probation, once denied, revests, where a defendant, on appeal, obtains a favorable result as to some counts, but not as to others. The Attorney General suggests that this court has discretion to order a reconsideration of the denial of probation on count I. His position is based on section 1260 of the Penal Code.[2] We need not decide whether he is correct. If, under procedural circumstances such as are presented in this case, we do have a discretion to order the trial court to reconsider the denial of probation with respect

---

[2]Section 1260 of the Penal Code reads as follows: "The court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or the punishment imposed, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial."

to count I, the demonstrated substantive facts of the case persuade us most strongly that this is no occasion for its exercise.

The judgment is affirmed as to count I. With respect to counts II and V the cause is remanded to the trial court for proceedings consistent with this opinion.

Stephens, J., and Reppy, J., concurred.