Filed 11/24/14  P. v. Maravilla CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>IGNACIO CASTILLO MARAVILLA,<br><br>    Defendant and Appellant. | B255307<br><br>(Los Angeles County<br>Super. Ct. No. PA073508) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dalila C. Lyons, Judge.  Affirmed with directions.

Edward H. Schulman for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and John Yang, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Ignacio Castillo Maravilla was convicted by a jury of 11 counts of lewd act upon a child under 14 years old. On appeal, he contends the evidence is insufficient to support his conviction on one of the counts involving C.P. Defendant also challenges the denial of his requests for disclosure of the victims' psychotherapy and school records and the omission from the abstract of judgment of the sentence in another case. We conclude that the evidence supports his conviction on all counts, and the trial court properly refused to disclose the records at issue. We also conclude that the abstract of judgment must be amended to reflect the sentence in another case, including the presentence custody credits. We therefore affirm the judgment with directions to amend the abstract of judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with 11 counts of lewd act upon a child under the age of 14 (Pen. Code, § 288, subd. (a)).[1] Counts 4, 5, 6, and 7 involved C.P. during the period January 2001 through December 2004; counts 8, 9, 10, 11, and 12 involved V.P. during the period January 2001 through December 2004; and counts 13 and 14 involved L.S. during the period November 2003 through November 2006. The information alleged as to each count that defendant committed the offense against more than one victim (§§ 667.61, 1203.066, subd. (a)(7)) and alleged as to some counts that he committed substantial sexual misconduct (§ 1203.066, subd. (a)(8)).[2] Defendant pled not guilty.

---

[1]    All statutory references are to the Penal Code unless stated otherwise.

[2]    The disposition of counts 1 through 3, and whether such counts were ever alleged, is not clear from the record.

The evidence presented at trial showed that defendant's wife, M., regularly babysat her nieces C. and V. C. and V. lived upstairs from defendant and M. in an apartment complex in Newhall. M. also sometimes cared for L., defendant's niece. M. sometimes left the children alone with defendant. The three girls testified that defendant sexually molested them on multiple occasions from 2001 to 2004. They testified that he sometimes gave them money afterwards and told them not to tell anybody what had happened. C. testified that defendant stopped molesting her when she was in third grade after her family moved from the Newhall apartment.

Defendant's molestation came to light when V., C.'s sister, told her therapist who, in turn, reported the allegations to the police. A police detective interviewed defendant concerning the allegations in May 2012. During his interview, defendant admitted to touching and putting his mouth on V.'s vagina and her touching his penis, and he stated that he regretted it. Defendant also admitted to touching C.'s vagina and L.'s vagina on one occasion each.

Before trial commenced, defense counsel subpoenaed records from the Child and Family Center relating to V. The Child and Family Center and V.'s mother objected and asserted the psychotherapist-patient privilege. On December 18, 2013, the trial court deferred ruling on the matter until the trial.

Defense counsel also subpoenaed school records relating to all three victims. The trial court inspected the school records in camera before trial. Balancing defendant's right to due process against the victims' interests in confidentiality, the court determined that none of the school records relating to V. and C. were relevant and

3

material.  On January 2, 2014, the court therefore ordered that the records be sealed and not be disclosed to defense counsel.  However, the court determined that some of the school records relating to L. were relevant and material and ordered those records only to be disclosed to defense counsel and the other records sealed.

Defense counsel requested an ex parte hearing to argue a basis for greater disclosure.  After the ex parte hearing on January 2, 2014, the trial court ordered the disclosure of additional school records relating to all three victims.  The court redacted certain information from the disclosed records.

The trial commenced on February 25, 2014.  The trial court inspected the Child and Family Center records relating to V. during trial.  The court determined that none of those records were relevant and material.  It therefore ordered that the records should not be disclosed, and that the records be sealed.

The jury found defendant guilty on all 11 counts.  The trial court sentenced defendant to 45 years to life in state prison plus a consecutive term of 16 years, awarded a total of 785 days of presentence custody credits (683 days of actual custody plus 102 days for conduct), and imposed restitution fines and other fees.  At the time of sentencing, the court also orally pronounced judgment in another case against defendant in which he had previously pled guilty or no contest (L.A. Sup. Ct. No. PA076112).  The court imposed a sentence of eight months in that case to be served concurrently with his sentence in the present case, imposed a fine and other fees, and awarded a total of 198 days of presentence custody credits (99 days of actual custody plus 99 days for conduct) in No. PA076112.

4

## CONTENTIONS

Defendant contends (1) the evidence is insufficient to support his conviction on one of the four counts involving C.; (2) this court should independently review all of the sealed records to determine whether they should have been disclosed to defense counsel; and (3) the abstract of judgment should be amended to include the sentence in No. PA076112, including the presentence custody credits.

## DISCUSSION

1. *There was Sufficient Evidence of Four Molestation Incidents Involving C.*

Defendant contends the evidence is insufficient to support his conviction on one of the four counts involving C. because in her testimony she described only three molestation incidents. We disagree.

We review the sufficiency of the evidence to support a criminal conviction under the substantial evidence standard. Substantial evidence is evidence that is reasonable, credible, and of solid value such that a rational trier of fact could find the defendant guilty beyond a reasonable doubt. We view the evidence in the light most favorable to the judgment and accept as true all evidence tending to support the judgment, including all facts that reasonably can be deduced from the evidence. We affirm the judgment only if an examination of the entire record viewed in this light discloses substantial evidence to support the judgment. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053*; People v. Jones* (1990) 51 Cal.3d 294, 314.)

5

C. testified that M. babysat her and her sister V. from Monday through Friday, and sometimes on weekends, from the time C. was in kindergarten until third grade. M. babysat other children as well. C. stated that M. sometimes left them alone with defendant and that he would touch her vagina. When asked on direct examination how often defendant touched her vagina, she responded, "Pretty often" and stated, "I just remember it happening a lot. More than one occasion." When asked if it happened regularly, she stated, "I don't remember if it was regularly, but it happened often, a lot."

C. testified that the touching occurred in the main bedroom, the living room, and the kitchen. She also described an incident when she and other girls lay on the living room floor in a circle with their heads in the center and their legs facing outward. Defendant then covered their faces with blankets, reached inside C.'s pants, and touched her vagina.

C. testified that defendant sometimes gave her money, told her to "keep quiet," and then touched her inappropriately. She also stated that he sometimes touched her first and then offered her money to keep quiet. When asked on direct examination, "Did the money situation happen a lot, where the defendant would give you money?" C. answered, "Yes." When asked, "The times you described the defendant touching you in the bedroom, the living room, and the kitchen, are those times different from the time that the defendant touched your vagina when you were in the circle?" C. answered, "Yes, because it would just be me." She stated that during the incidents in the bedroom, the living room, and the kitchen that she had referred to earlier she was alone with defendant.

6

On cross-examination, C. testified that defendant did not offer her money after the circle incident. When defense counsel asked, "When you were in the bedroom, were you offered money?" C. answered, "Most of the time." When asked, "And when you were in the living room, were you offered money," she answered, "Most of the time."

Defendant cites the following exchange on recross-examination.

Defense counsel: "Just to clarify, the time that you say that somebody touched you when you were in the circle, that was in the living room, or the bedroom?"

C.: "That was in the living room."

Defense counsel: "Okay. So that was the time in the living room that you're speaking of?"

C.: "Yes."

Defense counsel: "Not a separate time in the living room?"

C.: "No."

Defendant argues that this testimony shows that only one molestation incident occurred in the living room. We acknowledge that this testimony arguably contradicted C.'s earlier testimony in which she distinguished the touching that occurred when she was alone with defendant in the bedroom, the living room, and the kitchen from the touching that occurred in the circle incident when other children were present. However, her testimony that defendant did not offer her money after the circle incident but offered her money when touching occurred in the living room "Most of the time" suggests that other molestation incidents occurred in the living room apart from the

7

circle incident, as did her testimony that the touching occurred "Pretty often" and "a lot."

" 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

" '[I]t is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]' [Citation.] Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal. [Citation.]" (*People v. Zamudio*, *supra*, 43 Cal.4th at pp. 357-358.) Contradictions in a witness's testimony cannot justify a reversal unless they render the witness's testimony inherently improbable, meaning impossible to believe or obviously false. (*People v. Ennis* (2010) 190 Cal.App.4th 721, 728-729; *People v. Mejia* (2007) 155 Cal.App.4th 86, 98-99.)

We conclude that the testimony cited by defendant did not render inherently improbable C.'s other testimony indicating that more than one molestation incident

8

occurred in the living room. As such, substantial evidence supports defendant's conviction on all four counts involving C.

2.   *The Undisclosed Records Were Not Material to the Defense*

Defendant contends he was entitled to the disclosure of privileged and confidential records for purposes of cross-examination at trial if the records were material. He bases this contention on his right to due process under the Fourteenth Amendment. He also appears to invoke his due process right to the disclosure of favorable, material evidence in the possession of the prosecutor or persons acting on behalf of the prosecutor (*Brady v. Maryland* (1963) 373 U.S. 83, 87 [83 S.Ct. 1194]), although he does not attempt to show that the records were in the possession of the prosecutor or persons acting on behalf of the prosecutor. Defendant requests that this court review the records that the trial court refused to disclose in order to determine whether they should have been disclosed. The People state that they do not oppose the requested review.

Appellate courts routinely review sealed records withheld from disclosure after an in camera inspection by the trial court to determine whether the records were material and should have been disclosed. (*People v. Martinez* (2009) 47 Cal.4th 399, 453; *People v. Prince* (2007) 40 Cal.4th 1179, 1285.) Evidence is material for these purposes only if there is a reasonable probability that its disclosure to the defense would have produced a different result. (*People v. Martinez*, *supra*, 47 Cal.4th at p. 453; *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 7-8.) We also consider the

9

effect of the nondisclosure on defense counsel's investigations and trial strategy. (*People v. Martinez, supra*, at p. 454.)

We have independently reviewed the sealed transcripts of the in camera proceedings in which the trial court adequately described the contents of the records and its reasons for not requiring disclosure of those records. We conclude that the undisclosed information in those records was not material to the defense. We therefore conclude that the court properly refused to disclose the records.

3. *The Abstract of Judgment Must be Amended*

Finally, defendant contends the abstract of judgment should be amended to include the sentence in No. PA0786112, including the presentence custody credits. The People state that the sentence imposed in that case "is now intertwined with the sentence from the current case" and agree that the abstract of judgment should be amended to include the sentence in No. PA0786112.

"[T]he abstract of judgment is not itself the judgment of conviction, and cannot prevail over the court's oral pronouncement of judgment to the extent the two conflict. (§§ 1213, 1213.5; *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [109 Cal.Rptr.2d 303, 26 P.3d 1040]; *People v. Mesa* (1975) 14 Cal.3d 466, 471 [121 Cal.Rptr. 473, 535 P.2d 337]; *People v. Hartsell* (1973) 34 Cal.App.3d 8, 14 [109 Cal.Rptr. 627].) However, the abstract is a contemporaneous, statutorily sanctioned, officially prepared clerical *record* of the conviction and sentence. It may serve as the order committing the defendant to prison (§ 1213), and is ' "the process and authority for carrying the judgment and sentence into effect." [Citations.]' (*In re Black* (1967) 66 Cal.2d 881, 890 [59 Cal.Rptr.

10

429, 428 P.2d 293].)  As such, 'the Legislature intended [it] to [accurately] summarize the judgment.'  (*Mitchell*, *supra*, at p. 186, citing with approval *People v. Hong* (1998) 64 Cal.App.4th 1071, 1080 [76 Cal.Rptr.2d 23].)"  (*People v. Delgado* (2008) 43 Cal.4th 1059, 1070.)

This court has the authority to correct clerical errors in an abstract of judgment. (*People v. Mitchell*, *supra*, 26 Cal.4th at pp. 186-187.)  The superior court clerk is directed to amend the abstract of judgment to reflect the judgment in No. PA0786112, including, without limitation, the conviction, sentence, and presentence custody credits in that case.

## *DISPOSITION*

The judgment is affirmed.  The clerk is directed to prepare an amended abstract of judgment in accordance with this opinion and to forward a copy to the Department of Corrections and Rehabilitation.

### *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

LAVIN, J.*

WE CONCUR:

KITCHING, Acting P. J.

ALDRICH, J.

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.