Filed 11/4/15  P. v. Snyder CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061460 |
| v. | (Super.Ct.No. SWF1200233) |
| JOSHUA FRANKLIN SNYDER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John M. Davis, Judge. Affirmed with directions.

Reed Webb, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

After driving erratically in the early hours of the morning, defendant Joshua Snyder was stopped on suspicion of driving under the influence of alcohol.  He admitted

1

to ingesting several drinks, failed all field sobriety tests, and his blood tests revealed a blood alcohol level of 0.25 percent. Defendant was charged with driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)), and driving with a blood alcohol level of 0.08 percent or above (Veh. Code, § 23152, subd. (b)), along with special allegations that he had a blood alcohol level above 0.15 percent (Veh. Code, § 23578), four prior convictions for drunk driving, and two prior prison terms for separate felony drunk driving convictions within the meaning of Penal Code, section 667.5, subdivision (b). Defendant was convicted by a jury as charged and appealed.

On appeal, defendant argues that he was deprived of his constitutional right to effective assistance of counsel because his original trial counsel failed to timely seek retesting of the blood sample, which was destroyed a year after it was analyzed. We affirm, but direct the clerk of the court to amend the abstract of judgment.

**BACKGROUND**

On October 1, 2011, at approximately 2:10 a.m., Riverside Sheriff's Deputy Lopez was on patrol when he observed a white F150 pickup truck swerving in the number one lane along Winchester Road. The deputy observed the vehicle swerve within its lane, cross the median lines into the center median, cross into the number one lane of oncoming traffic, swerve back into its own lane, straddle the lane divider, and eventually turn abruptly into the number two lane. Deputy Lopez initiated the overhead lights of his patrol vehicle and conducted a traffic stop.

The deputy made contact with Joshua Snyder, the defendant, who was driving the vehicle and asked defendant if he had consumed alcohol that night. Defendant responded

2

in the affirmative, telling the deputy he had consumed seven "Jacks and cokes" (referring to Jack Daniels whiskey) at the Skybox bar. The deputy observed that defendant's speech was slurred, his movements were slow and lethargic, his eyes were red and watery, and his breath smelled of alcohol. In the deputy's opinion, defendant's symptoms were consistent with someone who might be under the influence of alcohol, and asked defendant to step out of his vehicle.

The officer ascertained that defendant weighed 180 pounds, and asked defendant several questions to rule out mechanical difficulties or medical problems. He asked defendant a second time if had been drinking, and this time defendant stated he had four Jack and cokes. Defendant denied that alcohol affected his driving, explaining that he was using his cell phone.

The deputy conducted three field sobriety tests on the side of the road: the Romberg test (where the person stands with his eyes closed and head tilted backward to test the person's proprioception and sense of time), the one-legged stand test, and the walk and turn test. During the Romberg test, defendant began swaying and estimated that a 50 second interval lasted 30 seconds. During the one-legged stand, defendant lost his balance and started to fall backwards, so the deputy had to catch him to prevent him from hurting himself. During the walk and turn test, defendant had difficulty placing one foot in front of the other and fell back, stepping out to regain his balance. The officer stopped the test so he would not fall and hurt himself.

At the conclusion of the field sobriety tests, the deputy formed the opinion that defendant was under the influence of alcohol, and placed him under arrest. After

3

defendant was transported to the police station, a nurse arrived to draw blood at approximately 4:10 a.m. The deputy took custody of the blood sample, which was subsequently delivered to the California Department of Justice Regional Crime Lab for forensic analysis, where it was tested on October 17, 2011. A criminalist tested the blood sample using head space gas chromatography and reported that defendant's blood sample showed a blood alcohol concentration (BAC) of 0.25 percent. A 180-pound male would have to consume approximately 11 standard drinks to have a BAC of 0.25 percent.

In the opinion of the criminalist, for defendant to have a 0.25 percent BAC at 4:00 a.m., he would have had to consume more than 12 drinks, given the burn off and absorption rates. It was not scientifically possible for a 180-pound male with a 0.25 percent BAC to have consumed only four drinks, and he would have had to have consumed more than seven drinks.

Defendant was charged with felony driving under the influence of alcohol (Veh. Code, § 23152, subd. (a), count 1), with four prior drunk driving convictions, and a special allegation that his blood alcohol concentration exceeded 0.15 percent. (Veh. Code, § 23578.) He was also charged with driving with 0.08 percent or more blood alcohol (Veh. Code, § 23152, subd. (b), count 2), along with the allegations of his four prior drunk driving convictions and having a BAC over 0.15 percent (Veh. Code, § 23578). It was further alleged that defendant had served two separate prison terms (prison priors) for separate prior felony convictions for drunk driving. (Pen. Code, § 667.5, subd. (b).)

Defendant was tried by a jury and convicted of both counts; the jury also found that defendant was driving with a BAC of more than 0.15 percent. After the verdict, defendant admitted having four drunk driving convictions and the two alleged prison priors. Defendant was sentenced on this case, and, in the same proceeding, he was resentenced on Case No. SWF1201846, involving charges filed while defendant was out on bail on this case.[1] The court imposed an aggregate term of eight months (one-third the middle term on count 1), which was ordered to run consecutive with the aggregate term imposed in the separate case, SWF 1201846. Defendant timely appealed.

## DISCUSSION

1. *Defendant Failed to Establish His Trial Counsel Provided Ineffective Assistance.*

Following defendant's arrest in 2011, his blood was drawn; several days later, it was analyzed by a criminalist, who determined that defendant's blood alcohol level was 0.25 percent. In 2013, defendant's fourth attorney indicated a desire to have the sample retested, but the sample had been destroyed in January 2013, apparently because the agency holding the sample believed the case to be a misdemeanor. In limine, defendant brought a motion to exclude the results of the blood alcohol testing due to the failure to

---

[1] The trial in the present case trailed the later-charged matter, so he was convicted and provisionally sentenced on case No. SWF1201846 before his jury trial in this matter. The term for the on bail enhancement, which was found true in case No. SWF1201846, was stayed pending the outcome in the present case.

preserve the evidence, which was denied.[2]  On appeal, defendant argues his right to

effective assistance of counsel was violated by counsel's failure to timely seek retesting

of the sample.  We disagree.

To demonstrate that his right to effective assistance of counsel was violated,

defendant must satisfy a two-pronged test:  He must show (1) performance below an

objective standard of reasonableness by his attorney, and (2) prejudice sufficient to

establish a reasonable probability he would have obtained a more favorable result in the

absence of counsel's error.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688,

693-694 [104 S.Ct. 2052, 80 L.Ed.2d 674].)  There is a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance.  (*People v.*

*Lucas* (1995) 12 Cal.4th 415, 436-437.)  Tactical decisions are generally not deemed

reversible, and counsel's tactical decisions must be evaluated in the context of all the

available facts.  (*Strickland v. Washington, supra,* 466 U.S. at p. 690.)

Where the record on appeal sheds no light on why counsel acted or failed to act in

the manner challenged, unless counsel was asked for an explanation and failed to provide

one, or unless there simply could be no satisfactory explanation, the claim on appeal must

be rejected.  (*People v. Mendoza Tello* (1997)15 Cal.4th 264, 266.)  Further, a court need

not determine whether counsel's performance was deficient before examining the

prejudice suffered by the defendant as a result of the alleged deficiencies.  (*People v.*

---

**2** Defendant does not challenge the trial court's in limine ruling on his motion for exclusion, or the court's refusal to give a special instruction referring to the failure to preserve the evidence, so we do not consider those issues.

*Carrasco* (2014) 59 Cal.4th 924, 982, citing *Strickland, supra,* 466 U.S. at p. 697.)  In other words, we need not determine whether defendant established the first prong of *Strickland*, deficient performance, if we conclude that even if counsel's performance was deficient, defendant has failed to sustain his burden on the issue of prejudice.  (*In re Alvernaz* (1992) 2 Cal.4th 924, 945.)

We acknowledge that diligent advocates may seek retesting of forensic evidence. We also acknowledge that the State has a duty to preserve evidence that possesses an exculpatory value that was apparent before the evidence was destroyed, and is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.  (*California v. Trombetta* (1984) 467 U.S. 479, 489 [81 L.Ed.2d 413, 104 S.Ct. 2528].)  But neither of these pronouncements establishes that an attorney's failure to promptly seek retesting of the forensic evidence constitutes deficient performance; nor do they establish the greater question of whether counsel's failure resulted in prejudice.

Defendant argues on appeal that the evidence was exculpatory because a blood alcohol result of 0.25 percent is "just too high a number."  He points to no evidence that a high BAC must be the result of flawed testing methods, or that such a result is inherently improbable.  Instead, he appears to base his argument on the criminalist's opinion that it was impossible for a person to have a BAC of 0.25 percent after only four drinks, premised on defendant's statement he had consumed no more than four alcoholic drinks. However, defendant's premise is faulty because (a) the expert did not state that the test results were wrong or improbable, he only suggested that defendant had been minimizing

his consumption, and (b) he had initially admitted to the arresting deputy that he consumed seven alcoholic beverages, which was also an attempt to minimize his consumption.

Whether he consumed four or seven alcoholic beverages is irrelevant, because even at four drinks, defendant's blood alcohol level would have registered 0.08 percent, enough to convict defendant of violating Vehicle Code, section 23152, subdivision (b). In this respect, there is no possibility defendant can successfully demonstrate prejudice flowing from any failure by his attorney to have the sample retested. Moreover, even without evidence of defendant's blood alcohol percentage, evidence of his driving pattern and performance of the field sobriety tests provided proof beyond a reasonable doubt he violated section 23152, subdivision (a), further precluding any possibility of showing prejudice.

Defendant provides no evidence or authority for the assertion that an unusually high percentage of alcohol in the blood must be a mistake, or for the speculation that retesting the sample would result in a lower BAC, one which would be exculpatory. Both assumptions are incorrect. First, chronic heavy drinkers are known to be more functional at higher rates of blood-alcohol concentration, which, in others, would be incapacitating or even fatal. (Vol. 28, Alcohol Alert (Apr. 1995), Natl. Inst. on Alc. Abuse & Alcoholism, http://pubs.niaaa.nih.gov/publications/aa28.htm, as of Sept. 21, 2015, citing Chesher & Greeley, *Tolerance to the Effects of Alcohol,* Vol. 8 Alcohol, Drugs and Driving 93-106 (1992).)

Second, defendant makes no showing that, if preserved, a retest of the blood sample would have provided exculpatory results, that is, that they would result in a BAC of less than 0.08 percent. Unless defendant could show that retesting would have yielded a blood-alcohol percentage of less than 0.08, or that he would have been acquitted of the charge of driving under the influence, as charged pursuant to section 23152, subdivision (a), he cannot prevail on a claim of ineffective assistance of counsel.

Third, the decision to retest forensic evidence is a matter of trial tactics: *Strickland* permits counsel to make reasonable decisions that make particular investigations unnecessary. (*Strickland, supra,* 466 U.S. at p. 691; see also, *Harrington v. Richter* (2011) 562 U.S. 86, 107-108 [131 S.Ct.770, 788-789, 178 L.Ed.2d 624].) In the absence of a record of counsel's explanation for not requesting the retesting of the sample, the claim is not properly before us. (*People v. Cudjo* (1993) 6 Cal.4th 585, 623; *People v. Brodit* (1998) 61 Cal.App.4th 1312.) We cannot assume from a silent record that favorable evidence would have been produced had counsel timely sought to retest the sample before it was destroyed (*People v. Medina* (1995) 11 Cal.4th 694, 773), nor can we speculate concerning counsel's reasons for not making the request for retesting before the sample was destroyed.

Because there is no theory under which defendant can establish prejudice from trial counsel's failure to request retesting of the blood sample, his claim of ineffective assistance of counsel must fail.

2.	*The Abstract of Judgment Requires Correction*

At sentencing, the court stated its decision to make the term imposed on this case to run consecutive to the sentence imposed in defendant's other case, Case No. SWF1201846.[3] The abstract indicates that the term of eight months was imposed on count 1, but the clerk did not indicate that the term was a consecutive one-third the midterm. Instead, the clerk typed "M" in the column designated "Term (L,M,U), and entered "8" in the months column for "Principal or Consecutive Time Imposed", although eight months represents one-third the midterm. For count 2, the abstract indicates the court imposed and stayed eight months, one-third the midterm of two years, where the usual practice is to impose and stay the entire term. There is also an "X" on the third line, in the column reserved for "Violent Felony," although no count or conviction is listed on line three in the table reserved for counts of conviction.

The abstract of judgment constitutes the commitment and is the order sending the defendant to prison, and the process and authority for carrying the judgment and sentence into effect; no other warrant or authority is necessary to justify or require its execution. (Pen. Code, § 1213; *People v. Mitchell* (2001) 26 Cal.4th 181, 185, citing *In re Black* (1967) 66 Cal.2d 881, 890.) It goes without saying that accuracy is essential in a document that prescribes the execution of sentence and is provided to Criminal Investigation and Identification. (Pen. Code, § 1213, subd. (a).) This court has the

---

[3] The conviction in that case was the subject of another appeal, *People v. Snyder,* E060990.

10

authority to correct clerical errors at any time. (*People v. Mitchell, supra*, 26 Cal.4th at pp.186-187.)

It is incorrect to designate a term that constitutes one-third the midterm as the midterm, reflected as an "M" under Item 1, ("Defendant was convicted of the commission of the following felonies"), in the column designated "Term (LMU)," where the court imposed one-third the midterm, consecutive, for that count. The clerk should have put an "X" in the box in the column designated "1/3 Consecutive."

The clerk also inserted an "X" on the third line in the Item 1, although there was no third count, and no violent felony. That "X" must be deleted.

### DISPOSITION

The judgment is affirmed. The clerk is directed to amend the abstract of judgment to delete the "M" from the line for count 1, and replace it with an "X" in the column for "1/3 Consecutive," and delete the "X" from the column for "Violent Felony" on the third line of Item 1.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

MILLER
J.

CODRINGTON
J.

11