Filed 3/20/17

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> JESSE LIN ANTOLIN, <br><br> Defendant and Respondent. | A147075 <br><br> (San Mateo County <br> Super. Ct. No. SC073522A) |

In 2013, defendant Jesse Lin Antolin was sentenced to an 11 year term in county jail. In 2015, the trial court granted his motion to recall the sentence and modify it to a "split sentence," with the remaining unserved time to be spent on mandatory supervision.[1] The People appeal, arguing the trial court lacked the authority to modify the sentence. We agree and hold that after the execution of defendant's sentence for a term in county jail pursuant to the Realignment Act had begun, the trial court lacked jurisdiction to modify the sentence.

BACKGROUND

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.

[1] "A split sentence is a hybrid sentence in which a trial court suspends execution of a portion of the term and releases the defendant into the community under the mandatory supervision of the county probation department. Such sentences are imposed pursuant to Penal Code section 1170, subdivision (h)(5)(B)(i), a provision originally adopted as part of the '2011 Realignment Legislation addressing public safety.' (Criminal Justice Realignment Act of 2011 (Realignment Act), operative Oct. 1, 2011, as added by Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 1.)" (*People v. Camp* (2015) 233 Cal.App.4th 461, 464, fn. 1 (*Camp*).)

A jury convicted defendant of possession of methamphetamine for sale (Health & Saf. Code, § 11378), and the trial court found defendant had three prior narcotics sales convictions (Health & Saf. Code, § 11370.2, subd. (c)).[2] In 2013, the trial court sentenced defendant to 11 years in county jail pursuant to former Penal Code section 1170, subdivision (h)(5)(A).[3] In January 2015, this court affirmed the judgment.

In August 2015, defendant filed a motion to recall his sentence and modify it to provide he serve the remaining term on mandatory supervision, to permit him to complete his sentence in a residential drug treatment program. Over the People's opposition, the trial court granted the motion and modified defendant's sentence, ordering an 11-year split sentence with the period of mandatory supervision to begin that day. The People appealed.[4]

## DISCUSSION

### I. *Authority to Modify Sentence*

The People argue the trial court lacked the authority to recall and modify defendant's sentence. We agree.

"Under the general common law rule, a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced.[5]

---

[2] The underlying facts are not relevant to this appeal.

[3] All undesignated section references are to the Penal Code. Although section 1170, subdivision (h)(5)(A) currently provides trial courts shall impose split sentences unless not in the interests of justice, this provision took effect after defendant's sentencing. (Stats. 2014, ch. 26, § 16; § 1170, subd. (h)(7) [amendment effective Jan. 1, 2015 and applies prospectively only].)

[4] The order is appealable by the People as "[a]n order made after judgment, affecting the substantial rights of the people." (§ 1238, subd. (a)(5); see also *Camp, supra,* 233 Cal.App.4th at p. 466, fn. 7.)

[5] There are certain exceptions to this rule, none of which are present here. (See *People v. Amaya* (2015) 239 Cal.App.4th 379, 384–386 [listing exceptions].) Defendant suggests this common law rule applies only to state prison sentences. We disagree, as it has been applied to sentences of fines only (*People v. McAllister* (1940) 15 Cal.2d 519) and to sentences to county jail (*People v. Thomas* (1959) 52 Cal.2d 521).

[Citations.] Where the trial court relinquishes custody of a defendant, it also loses jurisdiction over that defendant. [Citation.] If, however, the trial court 'retains in itself the actual or constructive custody of the defendant and the execution of his sentence has not begun,' the court may vacate and modify the sentence." (*People v. Karaman* (1992) 4 Cal.4th 335, 344 (*Karaman*).) "As long as the trial court retains in itself the actual or constructive custody of the defendant and the execution of his sentence has not begun, it retains jurisdiction over the defendant and the res of the action . . . ." (*In re Black* (1967) 66 Cal.2d 881, 888.)

Defendant does not dispute that the execution of his 2013 sentence had begun, as he had served some years of the sentence at the time it was modified.[6] He argues, however, that the common law rule that jurisdiction is lost upon execution of the sentence does not apply to sentences imposed pursuant to the Realignment Act because the Realignment Act's "sentencing framework is a 'wholly statutory' creation of very recent origin." We disagree.

As an initial matter, that a sentencing framework is "wholly statutory" cannot be dispositive of the matter. The Determinate Sentencing Law is "wholly statutory," but there is no dispute that the common law rule regarding jurisdiction to modify sentences applies to state prison sentences imposed pursuant to this statutory scheme, except to the extent that a statute specifically provides otherwise. (See *Dix v. Superior Court* (1991) 53 Cal.3d 442, 455 (*Dix*) ["Section 1170(d) was enacted in 1976 as part of the

---

[6] "In a criminal case, the execution of a judgment of conviction is the process of carrying the judgment into effect. [Citation.] The manner of executing a judgment sentencing a defendant to imprisonment is prescribed by the Penal Code." (*Karaman, supra,* 4 Cal.4th at p. 344, fn. omitted.) The Penal Code provides where, as here, "the judgment is for . . . imprisonment pursuant to subdivision (h) of Section 1170, either a copy of the minute order or an abstract of the judgment . . . shall be forthwith furnished to the officer whose duty it is to execute the . . . judgment, and no other warrant or authority is necessary to justify or require its execution." (§ 1213, subd. (a); see also *Karaman,* at p. 345 [for judgment to state prison, " 'at least upon the receipt of the abstract of the judgment by the sheriff, the execution of the judgment is in progress' "].)

3

Determinate Sentencing Act" and "is an exception to the common law rule that the court loses resentencing jurisdiction once execution of sentence has begun."].)

Instead, " '[a]s a general rule, "[u]nless expressly provided, statutes should not be interpreted to alter the common law, and should be construed to avoid conflict with common law rules. [Citation.] 'A statute will be construed in light of common law decisions, unless its language " 'clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter . . . .' [Citations.]" [Citation.]' " [Citation.] Accordingly, "[t]here is a presumption that a statute does not, by implication, repeal the common law. [Citation.] Repeal by implication is recognized only where there is no rational basis for harmonizing two potentially conflicting laws." ' " (*People v. Ceja* (2010) 49 Cal.4th 1, 10 (*Ceja*).)

Defendant relies heavily on *Camp,* in which the defendant was sentenced to a split sentence under the Realignment Act. (*Camp, supra,* 233 Cal.App.4th at p. 465.) At the conclusion of the county jail term, probation officials learned Camp was to be deported upon his release from jail and would therefore be unavailable for mandatory supervision. (*Ibid.*) The trial court terminated Camp's mandatory supervision and modified his sentence to omit the mandatory supervision term. (*Id.* at p. 466.) The Court of Appeal rejected the People's argument that the trial court lacked authority to modify the sentence after its execution had begun pursuant to the common law rule discussed above. (*Id.* at p. 470–471.) Defendant argues this analysis suggests the trial court here had authority to modify his sentence.

There are significant differences in the Realignment Act between split sentences and straight sentences to county jail, however. At the time of defendant's 2013 sentencing, a Realignment Act sentence could be either "[f]or a full term in custody [in county jail] as determined in accordance with the applicable sentencing law," or "[f]or a term as determined in accordance with the applicable sentencing law, but *suspend execution of a concluding portion of the term*" which shall be served on mandatory supervision. (Former § 1170, subd. (h)(5)(A)-(B), italics added.) When a defendant is serving the jail portion of a split sentence, therefore, execution of the concluding portion

4

of the jail term has not yet begun and the common law rule would not deprive the trial court of jurisdiction (at least as to the concluding portion of the sentence). Moreover, the Penal Code explicitly provides that trial courts retain jurisdiction to modify the mandatory supervision term. Section 1170, subdivision (h)(5)(B) provides: "The period of supervision shall be mandatory, and may not be earlier terminated *except by court order*." (Italics added.) Section 1203.3, subdivision (a) provides: "The court shall also have the authority at any time during the term of mandatory supervision . . . to revoke, *modify*, or change the conditions of *the court's order suspending the execution of the concluding portion of the supervised person's term*." (Italics added.)

In other words, as to the mandatory supervision portion of a split sentence, there are statutes that " ' " ' " 'clearly and unequivocally disclose[] an intention to depart from, alter, or abrogate the common-law rule . . . .' " ' " ' " (*Ceja, supra,* 49 Cal.4th at p. 10.) In contrast, at the time of defendant's sentencing, there were no statutes authorizing modification of a straight county jail Realignment Act sentence after its execution had begun. (See Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2016) ¶ 11:14 ["it does not appear the court has any authority to modify a straight sentence imposed under section 1170(h)(5)," noting that in the statutes authorizing modification of mandatory supervision, "[n]o mention is made of straight sentences under section 1170(h)(5)(A)"].)

*People v. Howard* (1997) 16 Cal.4th 1081 (*Howard*) supports this analysis. In *Howard,* the Supreme Court held when a trial court imposes a sentence but suspends execution to grant probation, then subsequently revokes probation, the court lacks authority to modify the sentence. (*Id.* at p. 1084.) This limitation on trial courts' authority was imposed by statute, which controlled the issue despite the common law rule, expressed in *Karaman,* that a trial court retains jurisdiction to modify a sentence before its execution has begun: "Unlike the situation in *Karaman*, to which common law rules applied regarding retention of sentencing jurisdiction over the defendant, the authority to grant probation and to suspend imposition or execution of sentence is wholly statutory. . . . [¶] Our main purpose in *Karaman* was to address a situation that no statute directly controlled . . . . [*Karaman*] did not change the long-standing *statutory* rule that,

5

when a court revokes probation, canceling the suspension of a previously imposed sentence necessarily puts that sentence into 'full force and effect.' " (*Howard*, at pp. 1092–1093.) Unlike the situation in *Howard,* at the time of defendant's sentencing no statute governed the trial court's retention of jurisdiction over straight county jail Realignment Act sentences. In the absence of any such statute, the common law governs and provides the trial court lost jurisdiction to modify the sentence after execution had begun. (*Ceja, supra,* 49 Cal.4th at p. 10.)

As the parties note, section 1170, subdivision (d) has since been amended to authorize trial courts to recall Realignment Act sentences within 120 days. The former statute provided, "When a defendant subject to this section . . . has been sentenced to be imprisoned in the state prison and has been committed to the custody of the secretary, the court may, within 120 days of the date of commitment on its own motion, . . . recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence." (Former § 1170, subd. (d)(1).) Effective January 1, 2016, the amended statute applies also to a defendant who "has been sentenced to be imprisoned in the state prison *or county jail pursuant to subdivision (h)* and has been committed to the custody of the secretary or the county correctional administrator." (§ 1170, subd. (d)(1), italics added.)[7]

We agree with the People that the legislative history of this amendment supports our conclusion that, prior to the amendment, a trial court had no authority to modify a straight county jail Realignment Act sentence after its execution had begun. "Section 1170(d) is an exception to the common law rule that the court loses resentencing jurisdiction once execution of sentence has begun." (*Dix, supra,* 53 Cal.3d at p. 455.) The Legislative Counsel's Digest to the bill enacting the amendment explains: "Existing law authorizes a court to recall a sentence of imprisonment in the state prison and to

_____

[7] Defendant appears to concede that, had the amended statute been in effect at the time of his sentencing, the trial court would have lacked the authority to modify his sentence after 120 days.

6

resentence a defendant in the same manner as if the defendant had not previously been sentenced . . . . [¶] This bill would similarly *authorize* the court to recall a sentence of imprisonment in a county jail for a felony . . . ." (Legis. Counsel's Dig., Assem. Bill No. 1156 (2015-2016 Reg. Sess.), italics added.) The statement that the bill will "authorize" a trial court to resentence a defendant suggests the trial court previously lacked any such authority.

Finally, defendant argues that the common law rule was not violated here because the trial court did not alter the overall length of the sentence, but merely changed it from a straight county jail term to a split sentence. Under the common law rule, a trial court loses jurisdiction over a defendant when the execution of sentence begins. Defendant does not explain how a trial court could nonetheless retain jurisdiction to modify the form of the sentence, and he cites no authority to support such a construction of the common law rule. (See *Karaman, supra,* 4 Cal.4th at p. 350 [objective of common law rule is "obtaining finality in legal proceedings"].) Because the trial court lost jurisdiction over defendant when execution of his county jail sentence began, the court lacked authority to modify the sentence by converting it to a split sentence.

II. *Sentence on Remand*

Defendant argues that, if this court concludes the trial court lacked authority to modify his sentence, returning him to custody would be unjust.

In *People v. Tanner* (1979) 24 Cal.3d 514 (*Tanner*), after holding the defendant's grant of probation was unauthorized, the Supreme Court concluded: "Mr. Tanner having complied with his conditions of probation—including one year's stay in county jail—we determine a second incarceration would be unjust." (*Id.* at p. 522.)[8] Such an outcome is only warranted when three circumstances are present: "The mistake in the original grant

---

[8] Although our Supreme Court has since questioned *Tanner's* viability, it has not been overturned. (*People v. Clancey* (2013) 56 Cal.4th 562, 586 ["We . . . find it unnecessary here to decide whether *Tanner* remains good law."]; *People v. Statum* (2002) 28 Cal.4th 682, 697, fn. 5 ["Even if *Tanner* remains good law, defendant cannot satisfy this test."].) Consequently, we follow it.

of probation must have arisen from an uncertainty in the law reasonably giving rise to the trial court's erroneous disposition"; "the defendant ha[s] served or complied with the terms of probation, and that in reliance thereon he shall have returned to a law-abiding and productive life"; and, "because of unusual circumstances generating some unique element of sympathy for the defendant's plight, returning him to jail would be more than usually painful or 'unfair.' " (*People v. Lockridge* (1993) 12 Cal.App.4th 1752, 1759 (*Lockridge*).)

Although the parties ask us to determine whether defendant satisfies this three-part test, the record before us is insufficient to do so. The first requirement is obviously met; as in *Lockridge,* our decision to publish this opinion reflects our conclusion no published case has expressly resolved this question. (*Lockridge, supra,* 12 Cal.App.4th at p. 1760.) We express no opinion on the second and third requirements, and conclude they are more appropriately considered in the first instance by the trial court.[9]

## DISPOSITION

The order modifying defendant's sentence is reversed and the matter is remanded for further proceedings not inconsistent with this opinion.

---

[9] The People concede that, if defendant is returned to jail, he is entitled to actual credit for his time spent on mandatory supervision.

8

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

NEEDHAM, J.

(A147075)

Superior Court of San Mateo County, No. SC073522A, Hon. Mark R. Forcum, Judge.

Jonathan Soglin and Jeremy Price, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Bridget Billeter, Deputy Attorney General, for Plaintiff and Respondent.