Filed 8/25/20  P. v. Rouston CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GEORGE THOMAS ROUSTON,<br><br>    Defendant and Appellant. | D075616<br><br><br><br>(Super. Ct. No. SCD234128) |

APPEAL from an order after judgment of the Superior Court of San Diego County, Theodore M. Weathers, Judge.  Affirmed.

Charles R. Khoury, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

In 2018, the secretary of the California Department of Corrections and Rehabilitation (CDCR) sent a letter to the court recommending that the court recall the 2011 sentence of defendant George Thomas Rouston and

resentence him, due to perceived errors in the enhancements imposed. Defendant asked the court to recall the prior judgment and sentence him to time served in consideration of his evidence of rehabilitation. The court declined to recall the sentence. Defendant contends that the court abused its discretion in refusing to recall his sentence, and acted in excess of jurisdiction by failing to transfer his case to juvenile court. We reject these contentions, as explained below.

## BACKGROUND[1]

In 2011, defendant shot at Christopher M. multiple times, striking him three times, during a gang confrontation. One of the bullets caused Christopher to lose the ability to feel or move his leg and he was required to undergo surgery. Defendant was 14 years old when he committed this crime. (*Rouston I, supra*, 2013 WL 3212288 at p. *1.) The district attorney filed charges against defendant directly in adult criminal court, pursuant to the law applicable at the time. (Former Welf. & Inst. Code, § 707, subd. (d)(2), eff. Jan. 1, 2009, to Dec. 31, 2011.) Defendant was charged with attempted murder (count 1, Pen. Code,[2] §§ 664, 187) and assault with a semiautomatic firearm (count 2, § 245, subd. (b)), with three enhancement allegations: (1) commission of the offense for the benefit of a gang (§ 186.22, subd. (b)(1)); (2) personal use of a firearm (§ 12022.5, subds. (a), (d)); and (3) personal infliction of great bodily injury (§ 12022.7, subd. (a)). (*Rouston I*, at p. *1.)

---

[1] We have taken judicial notice of our unpublished opinion upholding defendant's conviction, *People v. Rouston* (June 25, 2013, D060911) [2013 WL 3212288] (*Rouston I*). We take the facts and procedure of defendant's conviction from that opinion.

[2] Further statutory references are to the Penal Code unless otherwise specified.

2

Defendant pleaded guilty to assault with a semiautomatic firearm and admitted the three enhancement allegations. He also admitted that he personally used a firearm within the meaning of the Welfare and Institutions Code provision permitting him to be charged as an adult. (Former Welf. & Inst. Code, § 707, subd. (d)(2)(B).) The prosecution agreed to dismiss the attempted murder charge and to a sentence between 10 to 20 years. (*Rouston I*, *supra*, 2013 WL 3212288 at p. *2.)

At sentencing on November 15, 2011, the prosecutor and the probation department both recommended a sentence of 20 years. The probation officer recommended a 10-year term for the gang enhancement, based on defendant's infliction of great bodily injury on the victim, with no separate sentence imposed on the great bodily injury enhancement. The court sentenced defendant to a total term of 16 years. It sentenced defendant to the lower three-year term for assault with a semiautomatic firearm; the lower three-year term for the personal gun use enhancement; and the 10–year term for the gang enhancement. The court explained that it selected the lower three-year terms for the assault offense and gun-use enhancement based on defendant's youthful age, lack of significant criminal history, and early acceptance of responsibility. It imposed the 10–year term for the gang enhancement based on defendant's personal use of a firearm. The court in the interest of justice exercised its discretion under section 1385 to strike the punishment for the personal infliction of great bodily injury enhancement. (*Rouston I*, *supra*, 2013 WL 3212288 at p. *2.)

Defendant appealed, claiming that the trial court erred by imposing both the 10–year gang benefit enhancement and the personal use of a firearm enhancement because both enhancements were based on his single act of using a firearm. The punishment for the gang enhancement is 10 years only

3

when the underlying felony is a violent felony, as defined in section 667.5, subdivision (c).  (§ 186.22, subd. (b)(1)(C).)  A violent felony is identified in section 667.5, subdivision (c)(8), as "[a]ny felony in which the defendant inflicts great bodily injury on any person . . . as provided for in Section 12022.7 . . . or any felony in which the defendant uses a firearm . . . as provided in . . . Section 12022.5 . . . ."

We affirmed defendant's judgment, concluding "there was no reversible error because the 10–year gang enhancement term could properly be premised on defendant's *personal infliction of great bodily injury* without reliance on his personal gun use."  (*Rouston I, supra*, 2013 WL 3212288 at p. *2.)

On October 16, 2018, CDCR sent a letter to the sentencing court recommending that it recall defendant's sentence pursuant to section 1170, subdivision (d)(1), based on its belief that the gang enhancement and personal use of a firearm enhancement were both based on defendant's firearm use, citing *People v. Rodriguez* (2009) 47 Cal.4th 501 (*Rodriguez*). When CDCR recommends recall and resentence, the court may also reduce the sentence based on "evidence that reflects that circumstances have changed since the inmate's original sentencing so that the inmate's continued incarceration is no longer in the interest of justice."  (§ 1170, subd. (d)(1).) The court can consider postconviction factors and reduce a defendant's term of imprisonment if it is in the interest of justice, based on the defendant's record of rehabilitation and other factors that have diminished the defendant's risk for future violence.  (*Ibid*.)

Defendant and the prosecutor both filed points and authorities, respectively supporting and opposing CDCR's recommendation.  The prosecutor argued there was no erroneous double use of the firearm as

enhancement, and defendant argued there was. Defendant also provided evidence of rehabilitation through his incarceration, asked the court to give due consideration to his age at the time of the offense, and asked the court to "recall the prior judgment and sentence [defendant] to time served" in the interest of justice.

The court reviewed the law relevant to the alleged error in sentencing and determined that no error had occurred because the infliction of great bodily injury made the assault a violent felony, supporting the 10-year sentence on the gang enhancement. It declined the invitation to recall and resentence defendant on the basis of purported sentencing error.

The court then turned to defendant's request to reduce the sentence in the interest of justice. It entertained defendant's arguments why the court should agree to recall the sentence. Defendant addressed the court, expressing his remorse and describing his growth in maturity, reformation and rehabilitation. The court considered defendant's age at the time of the offense, his difficult upbringing, his comments, his rehabilitation, and the reduction of sentence that he received at the original sentencing due to his youth, early admission of guilt, and lack of serious criminal history. On the other hand, the court said, the crime was extremely serious. Defendant fired his gun at the victim six to nine times. Leniency had already been given to defendant because he pleaded guilty to the lesser offense of assault with a semiautomatic firearm instead of attempted murder. Also, the court gave defendant a lesser sentence than requested. The court concluded, "[T]he sentence of 16 years was appropriate then. I think it's still an appropriate sentence."

Defendant filed a timely notice of appeal.

DISCUSSION

1. *Legal Principles*

    A. <u>Adjudication of Minors</u>

When defendant was prosecuted in 2011, the prosecutor was permitted to file felony charges against a 14-year-old juvenile directly in adult criminal court in certain circumstances, and did so here.  Since the passage of Proposition 57 in 2016, the prosecutor must now file all charges against minors in juvenile court, and can ask the court to transfer the case to criminal court when the minor committed certain felonies.  Effective January 1, 2019, minors who were under the age of 16 when they committed felonies cannot be transferred to adult court, except for those who were not apprehended before the conclusion of juvenile court jurisdiction.  (Welf. & Inst. Code, § 707, subds. (a) & (b).)  These new rules of adjudication are not applicable to cases that were final at the time the laws went into effect. (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 304 (*Lara*).) Defendant's case was final in 2013, when he exhausted his avenues of direct appeal.  (*People v. Barboza* (2018) 21 Cal.App.5th 1315, 1318; *People v. Diaz* (2015) 238 Cal.App.4th 1323, 1336.)

    B. <u>Modification of Sentence</u>[3]

A trial court generally has no jurisdiction to change a criminal defendant's sentence once execution of the sentence has commenced.[4]

---

[3]    Two days after the Attorney General filed his respondent's brief, the Supreme Court ordered depublication of the case of *People v. Abdullah* (Aug. 1, 2019, B290563), formerly published at 38 Cal.App.5th 218, which both parties had discussed in their briefs.  Therefore, we do not discuss that case.  (See Cal. Rules of Ct., rule 8.1125.)

6

(*People v. Karaman* (1992) 4 Cal.4th 335, 344; *People v. Antolin* (2017) 9 Cal.App.5th 1176, 1179.)  Section 1170, subdivision (d)(1), "is an exception to the common law rule that the court loses resentencing jurisdiction once execution of sentence has begun." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 455 (*Dix*); *People v. Humphrey* (2020) 44 Cal.App.5th 371, 377 (*Humphrey*).)  Under that subdivision, the trial court "*may*, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of [certain officials including the CDCR] *recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced . . . .*" (§ 1170, subd. (d)(1), italics added.)  If the request is initiated by the CDCR or other officials, the court may also reduce the sentence if postconviction factors show a diminished risk of future violence.  (*Ibid.*)  If the court agrees to recall and modify the sentence, it "has jurisdiction to modify *every* aspect of the sentence and not just the portion subjected to the recall." (*People v. Buycks* (2018) 5 Cal.5th 857, 893 [the "full resentencing rule"]; *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1258.)

CDCR can only recommend to the trial court that it recall and resentence the defendant.  The court retains the authority to accept or decline the CDCR's recommendation.  The statute is clearly permissive, not mandatory—it uses the verb "may," not "shall." (§ 1170, subd. (d)(1); *Humphrey*, *supra*, 44 Cal.App.5th at p. 378; *Dix*, *supra*, 53 Cal.3d at p. 459, fn. 12; *People v. Gibson* (2016) 2 Cal.App.5th 315, 324 (*Gibson*); *People v. Delson* (1984) 161 Cal.App.3d 56, 62 (*Delson*).)  If the court chooses to recall

---

4      There is an exception to this rule when the sentence was unauthorized (*People v. Cunningham* (2001) 25 Cal.4th 926, 1024), but that exception is not applicable here.

and resentence the defendant, it must give some indication that it is doing so. (*Humphrey, supra*, 44 Cal.App.5th at p. 378.)

We review the trial court's decision on a recommendation to recall for an abuse of discretion. (*Gibson, supra*, 2 Cal.App.5th at p. 325.) A trial court abuses its sentencing discretion when its decision is arbitrary or capricious, inconsistent with the letter and spirit of the law, or based on circumstances that constitute an improper basis for decision. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847; *Gibson*, at p. 325.) When a trial court bases its sentencing decision on an improper factor, the error is harmless unless there is a reasonable likelihood that the defendant would have received a more favorable result without the error. (*Gibson*, at p. 328.) " 'When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only [if] it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.' " (*Ibid.*; *People v. Price* (1991) 1 Cal.4th 324, 492 (*Price*); *People v. Leonard* (2014) 228 Cal.App.4th 465, 503.) It is not necessary for the court to specifically state what it would have done if it had known the law. (*People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896 (*Gutierrez*).)

2. *The Court Did Not Recall the Sentence or Resentence Defendant and the New Rules of Juvenile Adjudication Are Not Applicable*

Defendant contends that the court "restarted jurisdiction" over his sentence by formally considering the CDCR's recommendation, and was therefore obliged to apply the current laws of juvenile adjudication to him. The court, however, stated that it had not recalled defendant's sentence and was only considering whether to do so. We accept the court's characterization of its action. (*Humphrey, supra*, 44 Cal.App.5th at p. 378.)

8

The CDCR has no power to modify a defendant's sentence itself, but it can recommend to the trial court to do so.  The court can accept or reject that recommendation.  In *Delson,* the CDCR recommended that the trial court grant probation to the defendant in lieu of prison time pursuant to a postsentence diagnostic report.  The trial court refused to hold a hearing to consider the CDCR's recommendation.  (*Delson*, *supra*, 161 Cal.App.3d at pp. 60–62.)  The appellate court found no abuse of discretion because the trial court was not obligated to follow the recommendation.  (*Ibid*.)  The Legislature knows how to make procedures mandatory and applicable to all cases when it chooses to do so.  For example, the law enacted by Proposition 47, reducing many theft and drug felonies to misdemeanors, applies to all persons who were serving a sentence for a relevant conviction on the date of enactment (§ 1170.18, subd. (a)), and mandates that the court "shall" recall and resentence the petitioner if the criteria are satisfied, with limited discretion.  (*Id*. at subd. (b).)  A court "may," but need not, accept CDCR's recommendation to recall and resentence a defendant.  (*Delson*, at p. 62; *Humphrey*, *supra*, 44 Cal.App.5th at p. 378.)

The court did not recall and resentence defendant by virtue of permitting the parties to brief the legal issues and holding a hearing with defendant present.  The court gave defendant an opportunity to show there was good cause to recall the sentence.  This was a prudent response to the CDCR's letter to determine if a legal error had occurred.  The mere consideration of the recommendation does not constitute a recall.  (*Humphrey, supra*, 44 Cal.App.5th at p. 378.)  In *Humphrey*, the CDCR recommended that the court correct errors in the abstract of judgment.  (*Id*. at p. 375.)  The court held a hearing, restated and explained the defendant's sentence, and ordered the abstract to be corrected.  (*Id*. at pp. 375–376.)  On

9

appeal, defendant contended that this hearing constituted a recall and resentencing, and that the court was thus obliged to apply a new ameliorative law under the *Buycks* full-judgment rule. We rejected both contentions. (*Id.* at pp. 378, 380.)

We similarly reject defendant's claim here. The court did not recall the sentence or resentence defendant. His sentence was not disturbed or reopened. His sentence and judgment remained final. The new laws regarding juvenile adjudication were not applicable to him. (See *Humphrey, supra,* 44 Cal.App.5th at pp. 378–380; see also *Lara, supra,* 4 Cal.5th at p. 304 [Proposition 57 applicable only to judgments that were not final at time of enactment].)

3. *No Error or Abuse of Discretion in Declining to Recall and Resentence*

Defendant contends the trial court abused its discretion at the hearing because it was misinformed in two respects. He asserts that the trial court was misinformed as to the law because it was not aware that defendant could not have been transferred to and tried in the criminal court under the current law, requiring juvenile adjudication of those under 14. He also claims that the trial court was factually misinformed about the extent of the victim's injury. There was no reasonable probability that the court would have made a different decision with either or both of these pieces of information.

A. <u>Victim's Injury</u>

The court mentioned in passing that it did not know if the victim were still paralyzed or not. It never indicated that this was a factor in its decision not to recall the sentence, and it did not ask for an update. The court explained that the crime was very serious because defendant shot a semiautomatic firearm multiple times at another person. It said, "The

10

bottom line is it was extremely serious. . . . [Y]ou told the probation officer that you fired the gun nine times. The district attorney said six. I don't know. The bottom line is the kid got shot three times and couldn't walk."

The judge at the original sentencing in 2011 knew that the victim had recovered the ability to walk. Defense counsel told the judge at that time that the victim "is walking again and will—is not going to be paralyzed." With that information, the court imposed a sentence of 16 years. The same judge presided at the recent hearing. He said, "the sentence of 16 years was appropriate [in 2011]. I think it's still an appropriate sentence." The judge would have declined the invitation to recall and resentence even if he had been reminded in 2019 that the victim was not permanently paralyzed.

Any misperception of the victim's injury was harmless. (*Gibson*, *supra*, 2 Cal.App.5th at p. 327.) In *Gibson*, the trial court erroneously thought that section 1170, subdivision (d)(2), which provides lenity for inmates who were sentenced to LWOP as minors, did not apply to actual killers such as the defendant. The court found the error harmless, however, because the trial court denied the petition for lack of remorse and rehabilitation in addition to its erroneous understanding of the law. (*Gibson*, at p. 328.) The lack of remorse was sufficient by itself to support the denial of recall and resentence. (*Ibid*.)

The court here denied recall and resentencing because of the gravity of defendant's actions. This proper reason was a sufficient basis for the denial. It is not reasonably probable that the judge would have recalled the sentence and resentenced defendant if defense counsel had reminded the judge that the victim was not permanently paralyzed. (*Gibson*, *supra*, 2 Cal.App.5th at p. 328; *Price*, *supra*, 1 Cal.4th at p. 492.)

11

B. <u>Prohibition on Transfer of 14-Year-Olds to Criminal Court</u>

Neither the court nor the parties discussed the new law that prohibited transfer to criminal court for a juvenile who committed a crime at the age of 14. The court appeared to be unaware of this law because it stated that defendant might have been transferred to criminal court under Proposition 57 or the law before 1996, although that was only its speculation. It said:

> "I'm not sure that even if the law today applied, or even . . . the law prior to . . . 1996 . . . when they couldn't direct file, that you would have gotten treated any differently. I think that given the circumstances as they existed back when you were 15 that the Court may have decided that you were going to be tried in adult court anyway. I don't know. It would be speculation on my part."

The court did not mention the new law, under which defendant could not be transferred to criminal court. (See Welf. & Inst. Code, § 707, subds. (a) & (b).)

The court found the crime serious enough to merit treatment as an adult regardless of defendant's age at the time of the crime. The judge said he had presided in juvenile court for several years. He knew that defendant was young when he committed this crime and that he had a difficult life as a child. The judge took those factors into account when sentencing defendant to prison, and when denying a reduction of his sentence. The judge clearly indicated that 16 years was an appropriate sentence, even considering defendant's young age.

Even if the court had been aware that juveniles who were under 16 at the time of the crime can no longer be prosecuted in criminal court, it would have known that the Legislature did not see fit to make this rule retroactive to all those who had committed crimes at 14 and 15 years old. Considering the court's repeatedly stated view of the severity of the crime, there is no

reasonable probability that the court would have chosen to provide a far more lenient sentence—resulting in defendant's imminent release from prison—if it had known that current law prohibits sentencing to prison a defendant who was 14 at the time of the crime, and that that would be the result of recalling and resentencing defendant. (*Gibson*, *supra*, 2 Cal.App.5th at p. 328; *Price*, *supra*, 1 Cal.4th at p. 492.)

   4. *Ineffective Assistance of Counsel*

Defendant asserts that his counsel was constitutionally ineffective in failing to inform the court about the new law and that the victim was not permanently paralyzed.[5]  We disagree.

To prevail on an ineffective assistance of counsel claim, defendant has the burden of proving that trial counsel's performance was deficient and that prejudice resulted from counsel's actions or inactions. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*); *People v. Bell* (2019) 7 Cal.5th 70, 125 (*Bell*).)  Counsel's performance is deficient if it falls below an objective standard of reasonableness, under prevailing professional norms. We presume that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. (*Strickland*, at p. 689.)  If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's

_____

5    Defendant moved for judicial notice on November 1, 2019, of exhibits about the victim's ability to walk.  We deny this request.  These documents could have been but were not presented to the trial court, and thus are not appropriate for judicial notice on direct appeal. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.)  Defendant has also submitted these documents in support of his petition for writ of habeas corpus that we are considering along with this appeal. (See *In re Rouston*, D077159.)

unprofessional errors, the result of the proceeding would have been different." (*Id.* at p. 694; *Bell*, at p. 125.) If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (*Strickland*, at p. 697; *People v. Bonilla* (2018) 29 Cal.App.5th 649, 654.) " 'A defendant must prove prejudice that is a " 'demonstrable reality,' not simply speculation.' " ' [Citation.]" (*People v. Henderson* (2020) 46 Cal.App.5th 533, 550.)

Defendant cannot show a reasonable probability of a more favorable result if his counsel had informed the court of the new law and that the victim was not permanently paralyzed. (*Strickland*, *supra*, 466 U.S. at pp. 694, 697; *Bonilla*, *supra*, 29 Cal.App.5th at p. 654.) At the original sentencing in 2011, the judge concluded that a 14-year old boy, with a terrible background, should be sentenced to 16 years in prison for firing multiple shots at a person, even if that person was not permanently paralyzed by the shots. Eight years later, the same judge reached the same conclusion. The judge mentioned the harm to the victim, but concentrated more on the serious danger of defendant's actions. He did not mention the fact that defendant would receive only a juvenile adjudication for the same behavior under current law, but he said that was not an appropriate outcome even if juvenile adjudication had been discretionary at the time. Defendant has not shown a reasonable probability that the court would have recalled and resentenced him even if it had known that 14-year-olds could no longer be sentenced like adults, and that the victim was not permanently paralyzed. (*Strickland*, *supra*, 466 U.S. at p. 694.) The court clearly indicated that it would not have recalled and resentenced defendant if it had known that the victim was not permanently paralyzed and if it had known about the more lenient treatment of juveniles. (*Ibid*.) We need not examine the quality of

defense counsel's performance.  Defendant has not borne his burden of demonstrating prejudice.  We reject his claim that his counsel was constitutionally ineffective.

## DISPOSITION

The order after judgment is affirmed.


BENKE, Acting P. J.

WE CONCUR:


HALLER, J.


GUERRERO, J.