Filed 8/26/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER HAYES CONATSER,<br>    Defendant and Appellant. | A154326<br><br>(Napa County<br>Super. Ct. No.<br>CR167593) |

Defendant Christopher Hayes Conatser was sentenced to a six-year period of mandatory supervision on an eight-year split sentence following his no contest plea to possession of a controlled substance for sale (Health & Saf. Code, § 11378) and admission to sentence enhancement allegations for two prior drug-related convictions (Health & Saf. Code, § 11370.2, subd. (c)).

Defendant moved to strike the two sentence enhancements, arguing he was entitled to the retroactive benefit of amendments to Health and Safety Code section 11370.2 that rendered his prior drug-related convictions no longer qualifying convictions for sentence enhancements. The trial court denied the motion, defendant appealed, and this court affirmed the denial order. (*People v. Conatser* (A154326, dec. Nov. 30, 2018 [nonpub. opn.] (*Conatser II*).) Defendant petitioned for review in our Supreme Court and, following its decision in *People v.*

*McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*), the Supreme Court transferred this case back to us.

In accordance with the Supreme Court's remand order, we vacate our prior decision filed on November 30, 2018. Having reconsidered the matter in light of *McKenzie*, we now conclude defendant is entitled to the benefit of the amendments to Health and Safety Code section 11370.2 because "this criminal prosecution or proceeding" had not been "concluded before the ameliorative legislation took effect." (*McKenzie*, *supra*, 9 Cal.5th at p. 46.) We therefore reverse the order denying defendant's motion to strike the sentence enhancements. We remand the matter to the trial court with directions to grant the motion to strike the two sentence enhancements imposed under Health and Safety Code section 11370.2 and to resentence defendant.

## BACKGROUND

In 2015, defendant pled no contest to one felony count of possession of a controlled substance for sale (Health & Saf. Code, § 11378) and admitted two prior drug-related convictions within the meaning of Health and Safety Code section 11370.2, subdivision (c). The trial court sentenced him to two years on the possession offense and imposed two consecutive three-year terms on the prior convictions. The court imposed a split sentence with the first two years to be served in county jail and the remaining six years to be served under mandatory supervision. (Pen. Code, § 1170, subd. (h)(5)).[1] We affirmed the judgment on September 30, 2016. (*People v. Conatser (*A146093; dec. Sept. 30, 2016) [nonpub. opn.] (*Conatser I*).)

---

[1] All further unspecified statutory references are to the Penal Code.

2

Senate Bill No. 180, effective January 1, 2018, made amendments to Health and Safety Code section 11370.2. Of import here, the offenses of which defendant had previously been convicted no longer qualified for the imposition of a sentence enhancement under section Health and Safety Code 11370.2, subdivision (c). (Stats. 2017, ch. 677, § 1 (S.B. 180), eff. Jan. 1, 2018.) On February 5, 2018, defendant filed a motion to strike the two Health and Safety Code section 11370.2 sentence enhancements in light of the passage of Senate Bill No. 180. The trial court denied defendant's motion on the ground the new law did not apply because his judgment was final before the amendments became effective.[2]

## DISCUSSION

The parties do not dispute that the amendments to Health and Safety Code section 11370.2 enacted by Senate Bill No. 180 apply retroactively to cases in which a defendant's judgment is not final. (*In re Estrada* (1965) 63 Cal.2d 740, 745, 748 (*Estrada*) ["where the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed" so long as the amended statute takes effect before the judgment of conviction becomes final]; see *People v. Nasalga* (1996) 12 Cal.4th 784, 792 ["[t]he rule in *Estrada* has been applied to statutes governing penalty enhancements, as well as to statutes governing substantive offenses"].)

---

[2] Defendant also sought early termination of his mandatory supervision under *People v. Camp* (2015) 233 Cal.App.4th 461 (*Camp*). The trial court denied this request on the ground that he was sentenced in conformity with his plea agreement. On appeal, defendant does not challenge the court's denial of this request and the Supreme Court's remand order does not implicate this decision.

3

In accordance with the reasoning set forth in *Estrada*, in *McKenzie*, *supra*, 9 Cal.5th 40, the Supreme Court found McKenzie, who was placed on probation after imposition of sentence was suspended, could take advantage of the ameliorative statutory amendments enacted in Senate Bill No. 180, which took effect during his later appeal from a judgment revoking probation and imposing sentence. (*Id.* at p. 43.) Because a final judgment had not been rendered at the time Senate Bill No. 180 became effective, the Supreme Court had no difficulty in concluding McKenzie was entitled to the benefit of the new law under *Estrada*. (*Id.* at p. 45.)

The case before us concerns the finality of a judgment when a court imposes a split sentence, i.e., orders execution of a portion of the sentence in the county jail and then places defendant on mandatory supervision following suspension of the execution of the remaining portion of the sentence. While the Supreme Court in *McKenzie* was faced with a different factual scenario, we conclude defendant is similarly situated to the probationer in *McKenzie* because, like McKenzie, defendant's criminal proceeding was ongoing at the time Senate Bill No. 180 became effective. Therefore, defendant is entitled to the benefit of the new law.

Section 1170 governs the imposition of a split sentence. As set forth therein, the court orders a portion of the sentence to be served in the county jail, but "suspend[s] execution of a concluding portion of the term for a period selected at the court's discretion." (§ 1170, subd. (h)(5)(A).) The portion of a defendant's term that is suspended is known as mandatory supervision and it may only be terminated early

4

by court order.  (§ 1170, subd. (h)(5)(B).) [3]  "Section 1170, subdivision [(h)(5)(B)] expressly state[s] that a period of mandatory supervision may be terminated by court order, and contain[s] no limitation of any kind on a trial court's exercise of such authority.  Further there [is] nothing in the text of section 1170, subdivision [(h)(5)(B)] that would indicate that a trial court does not have the authority to modify the sentence of a defendant subject to mandatory supervision." (*Camp*, *supra*, 233 Cal.App.4th at p. 470 [discussing prior version of the statute]; see *People v. Antolin* (2017) 9 Cal.App.5th 1176, 1180-1181 [statutory scheme discloses the Legislature's clear and unequivocally intent to depart from common law rule that a trial court loses resentencing jurisdiction once execution of sentence has begun].)

In our earlier opinion, we found the imposition of a split sentence was a final judgment within the meaning of *Estrada* when the time for direct appellate review of the split sentence had expired, even if the trial court had the authority to terminate mandatory supervision without ordering the suspended portion of the sentence to be served. (*Conatser II*, *supra*, at pp. 3-5.)  The People contend *McKenzie* reinforces our prior conclusion, arguing that defendant was not entitled to the benefits of Senate Bill No. 180 because the imposition of the split

_____

[3]     Section 1203.3 allows the trial court "at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence. . . . The court also has the authority at any time during the term of mandatory supervision pursuant to subparagraph (B) of paragraph (5) of subdivision (h) of Section 1170 to revoke, modify, or change the conditions of the court's order suspending the execution of the concluding portion of the supervised person's term." (§ 1203.3, subd. (a).)  Section 1203.3 also provides the mechanism by which the trial court may modify the sentence or term or condition of probation or condition of mandatory supervision.  (§ 1203.3, subd. (b).)

5

sentence qualified as a judgment of conviction for purposes of *Estrada* retroactivity, and the "judgment of conviction" became final before the new law became effective in 2018. Mindful of the reasoning in *McKenzie*, we see no merit to the People's argument.

In *McKenzie, supra*, 9 Cal.5th 40, the Supreme Court cited with approval its earlier decision in *People v. Chavez* (2018) 4 Cal.5th 771 (*Chavez*), which considered whether a trial court could dismiss a criminal action under section 1385 after a defendant had completed a term of probation (*Chavez, supra*, at p. 777). In holding the trial court had no jurisdiction to dismiss the action after a defendant had completed his probation, *Chavez* discussed when an order of probation that suspends the imposition or execution of sentence becomes a final judgment for the purposes of determining when a court loses its resentencing jurisdiction. (*Id*. at p. 781.)

*Chavez* specifically confirmed that, as to a court's resentencing jurisdiction, "neither forms of probation – suspension of the imposition or suspension of the execution of sentence – results in a final judgment. In a case where a court suspends imposition of sentence, it pronounces no judgment at all, and a defendant is placed on probation with 'no judgment pending against [him].' [Citation]. In the case where the court suspends execution of sentence, the sentence constitutes 'a judgment provisional or conditional in nature.' [Citation.] The finality of the sentence 'depends on the outcome of the probationary proceeding' and 'is not a final judgment' at the imposition of sentence and order to probation. [Citation.] Instead of a final judgment, the grant of probation opens the door to two separate phases for the probationer:

6

the period of probation and the time thereafter." (*Chavez*, *supra*, 4 Cal.5th at p. 781.)

*Chavez* further explained: "During the probation period, the court retains the power to revoke probation and sentence the defendant to imprisonment. Sections 1203.2 and 1203.3 elaborate upon the fundamentally revocable nature of probation. Section 1203.3, subdivision (a), for instance, provides that '[t]he court shall have authority *at any time during the term of probation* to revoke, modify, or change its order of suspension of imposition or execution of sentence.' (Italics added.) . . . . So, the court's power to punish the defendant, including by imposing imprisonment, continues during the period of probation. [Citations.]" (*Chavez*, *supra*, 4 Cal.5th at p. 782; italics in original.)

Based on *Chavez*, cited with approval in *McKenzie*, we conclude the split sentence "constitutes 'a judgment provisional or conditional in nature.' [Citation.] The finality of the sentence 'depends on the outcome of the [mandatory supervision period] . . . ' and 'is not a final judgment' at the imposition of" the split sentence. (*Chavez*, *supra*, 4 Cal.5th at p. 778.) "Instead of a final judgment," the split sentence "opens the door to two separate phases" for defendant, the time spent in the county jail and the period of mandatory supervision. (*Ibid*.) During mandatory supervision, "the court retains the power to" revoke or modify the mandatory supervision and sentence defendant to imprisonment in the county jail. (*Id*. at p. 782.) Therefore, "the 'criminal action' – and thus the trial court's jurisdiction to impose a final judgment – 'continues into and throughout the period of [mandatory supervision]' and expires only 'when th[e] [mandatory

supervision] period ends.' " (*McKenzie*, *supra*, 9 Cal.5th at p. 47, quoting *Chavez*, *supra*, at p. 784.) Accordingly, defendant is entitled to retroactive application of the new law as "[i]t cannot be said that this criminal prosecution or proceeding concluded before the ameliorative legislation took effect." (*McKenzie*, *supra*, 9 Cal.5th at p. 46.)

We conclude by noting our decision is consistent with "the 'inevitable inference' that the Legislature, having 'determined that its former penalty was too severe,' 'must have intended' that the ameliorative statutory change 'should apply to every case to which it constitutionally could apply.' (*Estrada*, *supra*, 63 Cal.2d at pp. 744-745.) A contrary conclusion . . . would 'serve no purpose other than to satisfy a desire to vengeance,' and would have to rest on the impermissible view 'that the Legislature was motivated by [such] a desire.' (*Id.* at p. 745.) . . . Thus, applying those revisions in this case is fully consistent with *Estrada*." (*McKenzie*, *supra*, 9 Cal.5th at p. 48; see *People v. Collins* (1978) 21 Cal.3d 208, 213 ["an amendment eliminating criminal sanctions is [itself] a sufficient declaration of the Legislature's intent to bar all punishment for the conduct so decriminalized"].)

## DISPOSITION

Our November 30, 2018 decision filed in this appeal is vacated. The trial court's February 5, 2018 order denying defendant's motion to strike the two sentence enhancements imposed under Health and Safety Code section 11370.2 is reversed. The matter is remanded to the trial court with directions to enter a new order granting defendant's motion to strike the two sentence enhancements imposed under Health and Safety Code section 11370.2 and to resentence defendant.

8

_____
Petrou, J.

WE CONCUR:


_____
Siggins, P.J.


_____
Jackson, J.


*People v. Conatser/A154326*

9

Trial Court:        Napa County Superior Court

Trial Judge:        Hon. Mark S. Boessenecker

Counsel:            Office of Attorney General, Xavier Becerra, Attorney
                    General, Gerald E. Engler, Chief Assistant Attorney
                    General, Jeffrey M. Laurence, Senior Assistant
                    Attorney General, Donna M. Provenzano,
                    Supervising Deputy Attorney General, Melissa J.
                    Kendra, Deputy Attorney General, for Plaintiff and
                    Respondent.

                    First District Appellant Project, Jeremy Price, for
                    Defendant and Appellant.